Opinion issued April 7, 2005






     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00234-CR




CRYSTAL MICHELE BOLER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 44,752




O P I N I O N

          Crystal Michele Boler, appellant, pleaded guilty to the murder of Emily
Garrison. Appellant chose to have the jury determine her punishment. The jury
assessed punishment at life imprisonment. In three points of error, appellant argues
that the trial court fundamentally erred by (1) allowing a witness to invoke his Fifth
Amendment right against self-incrimination; (2) refusing to allow appellant the right
to present a defense witness; and (3) refusing to allow appellant the right to question
a witness on re-direct examination. We affirm.
Facts
          Deshone Boler, appellant’s husband, and the complainant were having an
affair. Boler moved in with the complainant and the complainant’s four-year-old
daughter. Shortly before the murder, Boler moved back in with appellant and
appellant’s children. Over the course of several weeks, appellant made multiple
telephone calls to the complainant. The complainant became increasingly frightened
of appellant, but refused to borrow a gun for protection.
          On the night of the murder, appellant called her friend, T. Anderson, and asked
her if she wanted to go for a ride to the complainant’s apartment. Appellant stated
that Boler was at home asleep with her children. She told Anderson that she took the
complainant’s apartment key from Boler’s key ring. Appellant told Anderson that she
was going to the complainant’s home to “hurt the b****” for messing with her family. 
Anderson refused to go with appellant. Anderson testified that appellant was a good
mother and was not a violent person.
          After the murder, appellant told her sister, S. N. Smith, that she had killed the
complainant. Smith testified that appellant told her that she took the complainant’s
apartment key from her husband’s key ring. Appellant told Smith that she had hit the
complainant with a tire tool, bit her, shot her, and slit her throat. Appellant told Smith
she did not want to use Boler’s gun, but she had no choice because she could not get
a different one. Smith testified that appellant was not a violent person.
          Appellant’s aunt, D. Rozell, testified that appellant told her that the
complainant called appellant and asked appellant to come to her apartment. 
Appellant told Rozell that the complainant and appellant got into an argument. 
Appellant said that the complainant pulled a gun, but that appellant bit and shot the
complainant. Rozell testified that appellant was not a violent person.
          Dr. S. Pustilnik, the Chief Medical Examiner, testified that he performed the
complainant’s autopsy. He stated that she received gunshot wounds to her head, to
her left arm, to her abdomen, and two to her right thigh. Dr. Pustilnik testified that
the complainant had several lacerations and bruises over her body. He stated that she
had a cross-hatched pattern abrasion to the center of her forehead, probably caused
by the grip of a gun. He testified that she had several fractured teeth and that one
tooth had been knocked out. Dr. Pustilnik stated that the blood pattern on the
complainant’s body indicated that she had been wearing a garment which had been
removed. He testified that the injuries to the complainant’s hands were consistent
with defensive wounds and did not indicate that she had scratched or hit anybody. 
Dr. Pustilnik also stated that the complainant was eight weeks pregnant when she was
murdered. 
          Dr. Pustilnik also testified that the complainant had a bite mark on her left
shoulder. He testified that the mark was made at or near the time of her death and
was excised for comparison purposes. Dr. P. Marsh, a forensic odontologist, testified
that he compared appellant’s dental impressions to the excised mark from the
complainant. Dr. Marsh stated that he was able to determine with medical certainty
that appellant was the person who bit the complainant. 
          Outside the presence of the jury, appellant called Boler to testify. Boler was
represented by counsel. Boler’s counsel informed the trial court that he had advised
Boler to invoke his Fifth Amendment right against self-incrimination.


 Following an
off-the-record conversation between the trial court and the State, appellant’s counsel,
and Boler’s counsel, appellant’s counsel began asking Boler questions. Boler
asserted his Fifth Amendment right and refused to answer. Appellant’s counsel
argued to the trial court that Boler was invoking his Fifth Amendment right on
matters that were not incriminating. Appellant’s counsel asked to make an offer of
proof and called Mike Ward, appellant’s investigator, to testify.
          Ward testified that, prior to the trial, he went with appellant’s counsel and
Boler’s counsel to interview Boler and that Boler cooperated freely. Ward testified
that appellant’s counsel had asked Boler if he had a key to the complainant’s
apartment, and Boler had answered, “No.” Appellant’s counsel had asked Boler if the
complainant had a gun, and Boler had said that the complainant had told him she had
gotten a gun. At that interview, Boler had also told Ward and the lawyers that
appellant was not violent. Ward further testified, on cross-examination by the State,
that Boler had not admitted to having a gun or giving a gun to anybody. 
          After Ward’s testimony and discussion with the attorneys, the trial court limited
the questions Boler could be asked at trial to those that would not violate Boler’s
Fifth Amendment rights. The State then objected to Ward’s testifying before the jury. 
It argued that Ward’s testimony would be hearsay and that any statements that Boler
had made during the pre-trial interview were not statements against his penal interest. 
The trial court sustained the State’s objection that Ward’s testimony was hearsay. 
The trial court also ruled that Boler’s statements were not against his penal interest
and that no other hearsay exception applied to the statements. 
          After a discussion off the record, the trial court allowed appellant to ask Boler
specific questions on direct examination and allowed the State to ask certain
questions on cross-examination. To ensure that Boler understood which questions
he would be compelled to answer, the trial court permitted appellant and the State to
ask the questions first outside the presence of the jury. After the State cross-examined Boler, appellant asked several questions on re-direct examination, to which
Boler invoked his Fifth Amendment right. The trial court then ruled that the
questions asked on direct and cross-examination would be allowed in the presence
of the jury, but that the questions asked on re-direct could not be asked before the
jury. Appellant’s counsel did not object. The jury was seated and only the agreed-upon questions were asked. Appellant’s counsel did not attempt to re-direct; nor did
he object to not being allowed to conduct a re-direct examination.
Discussion
          The crux of appellant’s appeal is that the trial court erred by not compelling
Boler to testify after he invoked his Fifth Amendment right against self-incrimination. 
          Invoking and Waiving the Fifth Amendment
          In her first point of error, appellant contends that her Sixth Amendment right
of compulsory process for obtaining witnesses supersedes Boler’s Fifth Amendment
right against self-incrimination. She asserts three “points of significance” to support
her contention. 
First, the questions put forth did not present a reasonable danger of
incrimination. Second, the witness had already waived his privilege by
responding to the questions during an investigative interview with his
lawyer present. Third, if the witness did have a right to invoke the Fifth
Amendment to the same questions answered previously, then testimony
of the witness’s responses were [sic] admissible as a hearsay exception
under Rule 804 of the Texas Rules of Evidence.
Because appellant reiterates her third argument in her third point of error, we address
only her first two arguments here.
 
          (1) Reasonable Danger of Incrimination
          The Sixth Amendment right to compulsory process is the right of the defendant
to present his own version of the facts to the jury so that the jury may determine
where the truth lies. U.S. Const. amend. VI; Washington v. Texas, 388 U.S. 14, 19,
87 S. Ct. 1920, 1923 (1967). “Generally a defendant’s right to compulsory process
is denied when the State arbitrarily denies a defendant the right to put on the stand a
witness whose testimony would have been relevant and material to his defense.”
Suarez v. State, 31 S.W.3d 323, 328 (Tex. App.—San Antonio 2000, no pet.). 
However, a person’s “constitutional privilege against self-incrimination overrides a
defendant’s constitutional right to compulsory process of witnesses.” Bridge v. State
726 S.W.2d 558, 567 (Tex. Crim. App. 1986). A trial court “cannot compel a witness
to answer unless it is perfectly clear, from a careful consideration of all the
circumstances in the case, that the witness is mistaken in asserting the privilege, and
that the answer cannot possibly tend to incriminate the witness.” Grayson v. State,
684 S.W.2d 691, 696 (Tex. Crim. App. 1984). 
In determining whether the witness really apprehends danger in
answering a question, the judge cannot permit himself to be skeptical;
rather must he be acutely aware that in the deviousness of crime and its
detection incrimination may be approached and achieved by obscure and
unlikely lines of inquiry.

Id. When a witness invokes his Fifth Amendment right against self-incrimination on
the advice of the witness’s counsel, the trial court is not obligated to make any further
determination. Chennault v. State, 667 S.W.2d 299, 302 (Tex. App.—Dallas 1984,
pet. ref’d) (citing Ross v. State, 486 S.W.2d 327, 328 (Tex. Crim. App. 1972)). 
          The record before us is clear. Boler was represented by counsel when he was
called to testify. His counsel informed the trial court that he had advised Boler to
invoke his Fifth Amendment right. The trial court was not required to make a further
determination to ascertain whether Boler’s assertion was valid. The trial court
properly refused to compel Boler to testify.
          (2) Waiver of Fifth Amendment Rights
          Appellant makes two arguments that Boler waived his right to invoke his Fifth
Amendment rights. First, appellant argues that because Boler, whose counsel was
present, answered her lawyer’s questions during a pre-trial interview, he cannot now
assert the Fifth Amendment privilege to the same questions. Second, appellant
contends that because Boler answered some questions before the jury he waived his
right and must answer all questions. 
          The Fifth Amendment is waived if “(1) the witness’ prior statements have
created a significant likelihood that the finder of fact will be left with and prone to
rely on a distorted view of the truth, and (2) that witness had reason to know that his
prior statements would be interpreted as a waiver of the [F]ifth [A]mendment’s
privilege against self-incrimination.” Grayson, 684 S.W.2d at 695 (citing Klien v.
Harris, 667 F.2d 274, 287 (2nd Cir. 1981)). 
          Appellant has failed to show that Boler’s testimony left the jury with a distorted
view of the truth. Boler testified that he knew appellant, that she was his wife, that
they had a three-year-old son together, that both had children from previous
relationships whom she cared for, and that she was a good mother. He stated that
children from the community come to their house to play and she watched them. On
cross-examination, Boler answered “No” when he was asked if a good mother takes
her children to steal a car. Boler also answered “No” when asked if a good mother
murders another mother in front of a three-year-old. Boler admitted that he had been
convicted of unlawful possession of a firearm by a felon and of felony escape. The
jury was instructed that “there are some other questions that each of the defense and
the State have for Mr. Boler, but Mr. Boler has decided that he is going to exercise
his privilege not to answer those questions.” 
          Appellant contends on appeal that Boler’s omitted testimony would have
shown that (1) Boler was with appellant’s children on the night of the murder; (2)
Boler did not have a key to the complainant’s apartment; (3) the complainant had a
weapon; and (4) Boler believed appellant was not a violent person. Here, the record
shows that (1) appellant admitted to Anderson that Boler was at home with her
children on the night of the murder; (2) appellant told Anderson and Smith that she
took the complainant’s apartment key from Boler’s key ring; (3) appellant told
Rozzell that the complainant had a gun; and (4) Anderson, Smith, and Rozell each
believed that appellant was not a violent person. 
          The record does not show that the jury was left with a distorted version of the
truth. Nor does anything in the record indicate that Boler had reason to know that his
prior statements would be interpreted as a waiver of his Fifth Amendment’s privilege
against self-incrimination. We conclude that Boler did not waive his Fifth
Amendment rights.
          We overrule appellant’s first point of error.
          Statements Against Penal Interest
          In her third point of error, appellant contends the trial court erred by refusing
to allow appellant’s investigator to testify as to what Boler stated during the pre-trial
interview. Appellant argues that, if Boler had a Fifth Amendment privilege not to
testify, then Boler’s statements were made against his penal interest and, therefore,
fell within a hearsay exception. See Tex. R. Evid. 803(24). She argues that because
the statements fell within a hearsay exception she should have been allowed to
introduce the statements through the testimony of her investigator.
          A hearsay statement is not admissible unless the statement falls under an
exception. Tex. R. Evid. 802. One such exception is a statement 
[W]hich was at the time of its making so far contrary to the declarant’s
pecuniary or proprietary interest, or so far tended to subject the declarant
to civil or criminal liability, or to render invalid a claim by the declarant
against another, or to make the declarant an object of hatred, ridicule, or
disgrace, that a reasonable person in declarant’s position would not have
made the statement unless believing it to be true.

Tex. R. Evid. 803(24). In a criminal case, a statement that tends to expose a declarant
to criminal liability is not admissible “unless corroborating circumstances clearly
indicate the trustworthiness of the statement.” Id. The rules of evidence do not limit
the exception to cases where the defendant is the declarant. Bingham v. State, 987
S.W.2d 54, 56 (Tex. Crim. App. 1999). 
          There is a two-part requirement to determine whether a statement is admissible
under rule 803(24). Bingham, 987 S.W.2d at 57. Both requirements must be met
before a statement is admissible. Id. A trial court must determine first whether the
statement in question tends to expose the declarant to criminal liability. Id. The
statement must be sufficiently against the declarant’s interest to be reliable. Guidry
v. State, 9 S.W.3d 133, 149 (Tex. Crim. App. 1999). Then the trial court must
determine whether corroborating circumstances exist that clearly indicate the
trustworthiness of the statement. Bingham, 987 S.W.2d at 57.
          We review a trial court’s decision to admit or exclude a hearsay statement
offered under rule 803(24) for an abuse of discretion. Id. at 57. The trial court abuses
its discretion when its decision is so arbitrary or so irrational as to fall outside the
“zone of reasonable disagreement.” See Head v. State, 4 S.W.3d 258, 263 (Tex.
Crim. App. 1999).
          First, the trial court was not obliged to make–and did not make–a determination
as to whether the statements as to which Boler invoked his Fifth Amendment rights
could or could not incriminate him. See Grayson, 684 S.W.2d at 696. Therefore, the
first prong of the test for admission of the same statements via the investigator’s
testimony–that the trial court determine whether the statement tends to expose the
declarant to criminal liability–is not met. Thus, the trial court did not abuse its
discretion by refusing to admit the investigator’s testimony.
          We overrule appellant’s third point of error.
          Re-Direct Examination
          We construe appellant’s second point of error as an argument that appellant’s
ability to confront the witness was improperly limited by the trial court’s refusal to
allow her counsel to conduct a re-direct examination of Boler.
          As discussed above, the trial court permitted each side to ask Boler its
questions and get his answers outside the presence of the jury. After the State cross-examined Boler, appellant’s counsel conducted a re-direct examination. On re-direct,
appellant’s counsel asked Boler if he remembered the night appellant and Anderson
went to pour paint on the complainant’s car. In response, Boler pled the Fifth
Amendment. Counsel then asked Boler whether he had been taking care of the
children on the night of the murder. Boler again invoked his Fifth Amendment
privilege. The trial court ruled that appellant’s questions on re-direct could not be
asked. Appellant did not object. Furthermore, appellant did not attempt to conduct
a re-direct examination when Boler testified before the jury.
          The general rule is that a contemporaneous objection is required to preserve
error. Tex. R. App. P. 33.1(a); Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App.
2000) (plurality op.); Jaenicke v. State, 109 S.W.3d 793, 795 (Tex. App.—Houston
[1st Dist.] 2003, pet. ref’d). Failure to preserve error generally waives the error. Hull
v. State, 67 S.W.3d 215, 217–18 (Tex. Crim. App. 2002); Muniz v. State, 851 S.W.2d
238, 255 (Tex. Crim. App. 1993). Because appellant did not object, she did not
preserve error under the general rule.
          Appellant contends, however, that the trial court’s failure to allow re-direct
examination is fundamental error. An appellate court may, in rare cases, “tak[e]
notice of fundamental errors affecting substantial rights although they were not
brought to the attention of the [trial] court.” Tex. R. Evid. 103(d); see Jasper v.
State, 61 S.W.3d 413, 420 (Tex. Crim. App. 2001); Blue, 41 S.W.3d at 132. No
objection is required when the error is so egregious that it rises to constitutional
dimensions. See Jasper, 61 S.W.3d at 421; Blue, 41 S.W.3d at 130. While claiming
fundamental error, appellant cites no authority, makes no argument, and fails to brief
as to why we should find fundamental error. See Tex. R. App. P. 38.1(h) (requiring
appellant’s brief to “contain a clear and concise argument for the contents made, with
appropriate citations to authorities and to the record.”). Therefore, appellant did not
meet her burden of showing fundamental error.
          We overrule appellant’s second point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Evelyn V. Keyes
                                                             Justice
Panel consists of Justices Taft, Keyes, and Hanks.
Publish. Tex. R. App. P. 47.2(b).