Opinion issued February 21, 2008











 






In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00682-CR
   



SHEIKH MOHAMMED SOHAIL, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Court at Law No. 3
Fort Bend County, Texas
Trial Court Cause No. 113899




 O P I N I O N
          Appellant, Sheikh Mohammed Sohail, appeals from a judgment convicting him
for Class A misdemeanor domestic violence assault. See Tex. Penal Code Ann.
§ 22.01(a)(1), (b) (Vernon 2007). Appellant pleaded not guilty. The jury found him
guilty and the trial court sentenced him to 365 days in jail, suspended for two years’
community supervision, and a $2000 fine. After complainant refused to testify by
invoking her right against self-incrimination, the trial court determined appellant’s
misconduct was the cause of complainant’s unavailability and allowed the State to
introduce her out-of-court statements that appellant punched her in the face. In three
issues, appellant challenges the trial court’s evidentiary rulings that (1) admitted
complainant’s out-of-court statements relating that appellant assaulted her;
(2) excluded complainant’s out-of-court statements denying that appellant assaulted
her; and (3) disallowed appellant’s attorney’s questions to complainant to determine
her reasons for invoking her right not to testify. We conclude that the trial court did
not abuse its discretion by admitting the out-of-court statements offered by the State
and by disallowing appellant’s repeated questioning of complainant about her reasons
for invoking her right not to testify. However, the trial court did abuse its discretion
by refusing to allow appellant’s sister to testify about inconsistent statements made
by complainant, but we conclude that the error was harmless. We affirm the
judgment of the trial court. 
 
Background
          Complainant, Saima Qureshi, and appellant were joined through an arranged
marriage in 1991, in a union that produced four children. It is undisputed that, on the
morning of September 30, 2004, when complainant was eight months pregnant,
appellant struck her on the right side of her face while they were at their house in
Sugar Land. According to appellant and his mother, who was present at the house,
appellant accidentally hit complainant in a reflex action when she spilled hot tea on
him. Complainant, however, described the strike by stating that appellant
intentionally hit her. After she was struck, complainant flew from Houston to
Carrollton in Dallas County, Texas to her parents’ house, bringing nothing with her
but the clothes she was wearing. While complainant was on the way to her parents’
house, appellant called them, stating, “I have sent your daughter back and I’m going
to see you in court.” 
          When complainant arrived at her parents’ home, she was shaking and crying. 
Complainant’s parents saw a bruise on her right eye. After complainant’s mother
learned from complainant what happened in Houston, she telephoned the local police. 
Complainant did not want to call the police because, according to complainant’s
mother, complainant said that appellant threatened to kill their children if she called
the police.
          Sergeant McCraw of the Carrollton Police Department obtained a statement
from complainant on the same day as the assault. When he spoke to complainant, she
was upset and crying. The Sergeant said that he saw a large bump on the side of her
head near her right eye that was beginning to bruise, as well as a large red abrasion
in that area. The injuries were recorded in photographs.
          When complainant returned to Sugar Land a day or two later, accompanied by
her mother, she met Officer Liedy of the Sugar Land Police Department, who took
complainant’s statement, wrote a report, and photographed the injuries. Officer Liedy
saw complainant’s black eye. Sugar Land Police Department Officer Cummins, who
later met complainant, also observed the black eye and bump on complainant’s head. 
Complainant, her mother, Officer Cummins, and another officer went to
complainant’s house to retrieve complainant’s hearing aid, medications, and some
clothing, but they could not enter the house because no one answered the door and
complainant did not have a key. 
          When the group returned to the house later that day, appellant answered. 
Officer Cummins described complainant’s reaction to seeing appellant was that
complainant “wouldn’t move; and she – it was very apparent that she was scared.” 
Officer Cummins said that complainant would look at appellant and then look away.
Complainant asked appellant permission to enter the house. When the officer asked
appellant about the claims against him, he became visibly upset as he raised his voice. 
As the group left the residence, appellant started screaming in a “very aggressive”
tone in a language that the officer did not understand. Later that night, complainant
called the officer to report that appellant was calling her, threatening to take her kids
away from her. The officer called appellant to tell him not to call complainant. The
following day, Officer Cummins returned to the residence for a welfare check on
appellant. Appellant said that complainant’s family would not let him speak to
complainant because he hit her. Appellant did not tell the officer that the physical
strike was a mistake or accident.
          In the week while her mother was in Sugar Land, complainant stayed with a
friend and obtained a protective order. At around the time the protective order was
issued, appellant agreed with members of the Pakistani community to allow
complainant to live in the house while he resided elsewhere. During a visit to a
hospital to see a sick relative, complainant’s mother was approached by appellant and
his mother, who asked for forgiveness as they fell to complainant’s mother’s feet.
Complainant’s mother told them to leave because the hospital room was not the
proper place for that behavior. Soon after complainant’s mother left for Dallas,
complainant dropped the protective order because, according to complainant’s
mother, “he forced her to.” Appellant moved back into the house, where he has
stayed since. 
          Complainant called her obstetrician, Dr. Durrani, to explain why she missed
her appointment that was scheduled for October 1. When complainant appeared on
October 6, the doctor was concerned about physical trauma that could injure the fetus. 
Dr. Durrani testified from complainant’s medical records that were admitted into
evidence. The doctor explained that the information about the physical confrontation
was “utilized in assessing her medical treatment.” The doctor testified that he saw a
bruise on her right eye and he felt a bump on her head. The doctor recommended
that, at least until the birth of the child, complainant reside separately from appellant,
and complainant agreed with his recommendation. Appellant introduced evidence
that, during the medical examination, complainant’s mother, who was present the
entire time, said complainant “is abused.” 
          At trial, the State called complainant as its first witness. After stating her name
and address, complainant invoked her right against self-incrimination. Outside the
presence of the jury, counsel for the State guaranteed complainant transactional
immunity for anything stated at trial about the assault, but she persisted in her refusal
to testify. The trial court held complainant in contempt of court, but complainant
continued to refuse to testify. Complainant had her own attorney present during the
hearing. Appellant later attempted to make a bill of exception by asking complainant
to state her reasons for not testifying, but she refused to state the reasons by stating
nothing more than that she was invoking her right against self-incrimination. 
          The trial court conducted a hearing outside the presence of the jury to
determine whether complainant’s out-of-court statements would be admitted at trial. 
The State’s theory was that the out-of-court statements were admissible because the
reason that complainant was unavailable as a witness was appellant’s threats against
her. Appellant’s position was that the law allowed the out-of-court statements if the
State proved appellant’s wrongdoing was done with the intention of preventing the
complainant from testifying, but that the State could not prove that here because the
complainant’s refusal to testify was not due to appellant’s misconduct. Appellant’s
theory for complainant’s refusal to testify was that she feared prosecution for perjury
because she gave inconsistent statements about whether appellant had intentionally
struck her. Outside the presence of the jury, the State presented witnesses to support
its theory that appellant’s wrongdoing caused complainant’s failure to testify. The
trial court ruled that complainant’s refusal to testify was due to appellant’s
wrongdoing and allowed the admission of the out-of-court statements offered by the
State.
          The State introduced out-of-court statements by complainant, over appellant’s
objections that the statements were hearsay admitted in violation of appellant’s
federal and state constitutional rights to confrontation and cross-examination. 
Sergeant McCraw, who saw complainant in Carrollton on September 30, testified that
complainant said that appellant assaulted her that day by striking her head with his
closed fist, causing her pain. She also told him that she attempted to call 911 to
report the assault but appellant grabbed the telephone from her to strike her on the
head with it before throwing it across the room. Complainant’s mother testified that
she was told by complainant, “My husband hit me with a closed fist in my eye and
then I tried to call 911. So, he yanked the phone from my hand and hit me on my
head with the phone.” The doctor said that the complainant told him that “after she
was punched in the face by her husband, she hit the wall.”
          Appellant introduced inconsistent statements made by complainant through his
cross-examination of witnesses called by the State. Appellant introduced evidence
that Officer Liedy’s offense report showed that complainant said that the bump was
caused by appellant’s taking the telephone away from her to strike her on the head
with it. Appellant also introduced evidence that complainant told the doctor that she
was punched in the face by her husband and that she hit a wall after that. Appellant
also introduced the doctor’s testimony that complainant told him that she was struck
a day or so before she went to Dallas on October 1, and he was not sure when the
strike occurred. Appellant further challenged the time of the offense by introducing
the sworn affidavit of Officer Cummins that accompanied the criminal complaint for
the charge of assault, which noted that complainant said that on the evening of
September 29, she and appellant argued and he struck her with the telephone and with
his hand as she tried to call 911. Although the affidavit showed that the assault
occurred on September 29, the date of the assault shown on the complaint itself was
September 30, which the officer explained by noting that it may have been the
argument that began the night before the assault.
          In his defense, appellant attempted to introduce evidence of prior inconsistent
statements made by complainant that appellant accidentally struck her when she
spilled hot tea on him. Appellant wanted to introduce complainant’s statements in a
letter, affidavit, tape recording, and verbal comments made to appellant’s sister. The
trial court determined that appellant could not introduce the evidence, which was
included in our appellate record under appellant’s bill of exception. 
          In his defense at trial, appellant presented testimonial evidence. Enrique
Ramirez, owner of a taqueria that rented space from a gas station owned and operated
by appellant, initially testified that he saw complainant uninjured and happy on
September 30, but he later acknowledged that he did not specifically recall the date
that he saw her.
          Appellant’s mother, Shakila Ishtiaq, lived with appellant and complainant for
18 years. Shakila testified that the argument between appellant and complainant
began the night before the physical contact. She said that they were very angry,
screaming at each other. Shakila heard appellant tell complainant to get him some
tea. Shakila saw complainant serve appellant the tea “with a force” that caused some
tea to fall on his chest. With one hand, appellant held his shirt, and with his other
hand, he “made contact” with complainant, touching her, as he ordered her to stay
back. He did not hit her with any force, nor with his fist, nor did he do anything with
a telephone. When appellant went to change his shirt, complainant said that she was
leaving for Dallas. Complainant left with no luggage.
          Consistent with his mother’s testimony, appellant testified that the physical
contact was an accident caused by the spilling of hot tea, which caused his hand to
react and accidentally hit complainant. Appellant asserted that the contact he made
with complainant’s face during the argument could not have caused the bruising
evident in the photographs, that the bruising was due to complainant’s hitting and
slapping herself, and that complainant’s mother enhanced the bruising by marking
complainant’s face with a permanent marker before taking photos. During cross-examination, the State confronted appellant with a taped recording of a voice mail he
left for complainant the day of the assault apologizing for “hitting” complainant. 
Appellant also disputed the claims by complainant’s mother that appellant’s abuse
caused complainant’s hearing loss, stating it was a condition complainant had had
since she was a child.
          Subsequent to the jury’s verdict of guilty, complainant was called to the
witness stand by appellant and testified in the punishment phase of trial. Complainant
admitted that appellant had hit her, giving her a black eye. When asked how many
times appellant had hit her, she responded, “That was the last time that’s happened.” 
She further stated, however, that she wanted appellant to come home and that they
wanted to go to counseling.
          After the trial court sentenced him, appellant filed a motion for new trial. The
motion for new trial complained of errors in jury selection, admission of inadmissible
evidence, restriction of testimony, and exclusion of evidence. After a non-evidentiary
hearing, the trial court denied the motion. The trial court suspended appellant’s
community supervision pending appeal.
Standard of Review for Evidentiary Rulings
          We review a trial court’s decision to admit or exclude evidence under an abuse
of discretion standard. Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). 
We will not reverse a trial court’s ruling unless that ruling falls outside the zone of
reasonable disagreement. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App.
2001). Therefore, we address each of appellant’s evidentiary challenges by
determining whether the trial court’s rulings were outside the zone of reasonable
disagreement. See id. An appellate court must uphold the trial court’s ruling if it is
reasonably supported by the record and is correct under any theory of law applicable
to the case. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).Admission of Out-Of-Court Statements 
          In his second issue, appellant contends that the trial court improperly admitted
hearsay statements made by complainant in violation of appellant’s state and federal
rights to confront and cross-examine complainant. Appellant asserts that the State did
not show that misconduct by appellant was aimed at causing complainant not to
testify. The State responds that the trial court properly admitted the out-of-court
statements due to appellant’s misconduct in making the witness unavailable. 
A. Applicable Law for Admission of Out-Of-Court Statements
           A defendant has a constitutional right to confront and cross-examine the
witnesses against him. See U.S. Const. amend. VI; Tex. Const. art. I, § 10;
Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). The Confrontation
Clause prohibits a witness from recounting a declarant’s out-of-court statements that
are testimonial unless the declarant is unavailable to testify and the defendant had a
prior opportunity to cross-examine the declarant, regardless of whether the
declarant’s statements are deemed reliable by the court. See Crawford, 541 U.S. at
68, 124 S. Ct. at 1374; accord Wall v. State, 184 S.W.3d 730, 734–35 (Tex. Crim.
App. 2006). However, the right of confrontation is not absolute, even when
testimonial hearsay statements are at issue. Gonzalez v. State, 195 S.W.3d 114, 117
(Tex. Crim. App. 2006). The Constitution provides defendants with an opportunity
to confront those witnesses against him, but 
if a witness is absent by [the defendant’s] own wrongful procurement,
[the defendant] cannot complain if competent evidence is admitted to
supply the place of that which he has kept away. The Constitution does
not guarantee an accused person against the legitimate consequences of
his own wrongful acts. 

Id. at 117–18. “[T]he rule of forfeiture by wrongdoing . . . extinguishes confrontation
claims on essentially equitable grounds.” Crawford, 541 U.S. at 62, 124 S. Ct. at
1370.
          Although the rule is not codified in the Texas Rules of Evidence, the Court of
Criminal Appeals has held that “a party forfeits the right to object, on hearsay
grounds, to the admission of a declarant’s prior statement when that party’s deliberate
wrongdoing procured the unavailability of the declarant as a witness.” Gonzalez, 195
S.W.3d at 119. The rule is widely utilized in cases where a defendant has
intimidated, bribed, or killed a witness in order to ensure unavailability. Id. at 118. 
We assume without deciding that the State must prove that appellant’s threats to
complainant were done with the intent to procure her silence as a witness.



          Contrary to appellant’s suggestion that the appearance of the complainant at
trial shows he did not intimidate her, physical unavailability is not the only way to
find forfeiture by wrongdoing. Intimidation is a well-recognized basis for
employment of forfeiture by wrongdoing. Id. Thus, complainant’s presence in court
does not resolve the matter of her unavailability as a witness. See id.
B. The Evidence Outside Presence of Jury that Appellant was Wrongdoer
          At the hearing outside the presence of the jury to determine the admissibility
of the out-of-court statements, complainant’s mother testified appellant struck
complainant hundreds of times over the last 10 years causing bruises and hearing loss
that requires complainant to wear a hearing aid. Complainant’s mother testified that
complainant is “very scared to testify.” Complainant’s mother said that appellant
threatened to kill complainant if she went to court, to treat her as a prostitute, and to
never allow her to see her children. Appellant also threatened violence to
complainant’s siblings and their families. Complainant’s mother received the
information about the assault by speaking to complainant and by conversing with
appellant, who called after this offense to say that he was going to kill complainant. 
Complainant’s mother said that appellant “always forces [complainant] to do
everything the way he wants it.” Complainant’s mother reported complainant’s
statement that appellant will beat her if she tries to call the police.
          Officer Cornelius with the Sugar Land Police Department described his visit
to appellant’s house on May 10, 2006, which was about a year and a half after this
offense, in response to a call reporting an argument. Complainant told the officer that
the argument with appellant began that day when complainant returned to her house
after unsuccessfully attempting to speak to the Assistant District Attorney to drop
these charges pending against him. The officer testified that complainant said that
appellant “made her go up to the court to try to get those charges either lessened or
dropped.” When she was unable to have the charges dropped, complainant said that
appellant pulled her hair and destroyed property in the house. 
          Although appellant disputed the violence and threats, the trial court could have
determined appellant was not credible and disregarded his version of the events. See
Bousquet v. State, 47 S.W.3d 131, 134–35 (Tex. App.—Houston [1st Dist.] 2001, pet.
ref’d) (deferring to trial court’s determination of historical facts when findings are
based on evaluation of credibility and demeanor). The record supports the trial
court’s implied determination that appellant’s intimidation caused complaint to refuse
to testify at the trial. The record shows repeated physical violence toward
complainant by appellant. Additionally, it shows appellant’s repeated threats to kill
complainant if she called police or pursued criminal charges. After this case was
filed, appellant “made” complainant go to the District Attorney’s office to try to get
the criminal charges dropped and then became violent when she was unable to meet
with the prosecutor. The trial court could have reasonably determined that fear of
prosecution for perjury was not the reason for complainant’s refusal to testify because
the State offered her transactional immunity for her trial testimony. Further,
complainant refused to testify despite the trial court’s decision to hold her in
contempt for her refusal to testify. We hold that the trial court did not abuse its
discretion in permitting the submission of complainant’s out-of-court statements by
determining that appellant’s deliberate wrongdoing procured the unavailability of
complainant as a witness. See id. Therefore, the trial court did not err by allowing
the doctor, complainant’s mother, and the Carrollton Police Officer to testify about
complainant’s out-of-court statements describing the assault.
          We overrule appellant’s second issue.
Exclusion of Out-Of-Court Statements
          In his first issue, appellant asserts that the trial court erred by excluding out-of-court statements made by complainant that were offered by appellant to impeach
complainant’s out-of-court statements that were introduced by the State. Outside the
presence of the jury, appellant offered out-of-court statements by complainant
denying that appellant intentionally hit her. Appellant claimed that the evidence was
admissible as (1) statements made against penal interest and (2) impeachment
evidence of complainant’s statements admitted at trial by the State’s witnesses. 
Appellant’s attorney made a bill of exception to include in the appellate record the
evidence excluded at trial. The excluded evidence is (A) physical evidence, namely
(1) a letter found by appellant that was written by complainant stating that appellant
never hit or pushed her; (2) a certified affidavit by complainant requesting dismissal
of the protective order so she could reunite with appellant; and (3) a tape recorded
statement by complainant, and (B) the live testimony by appellant’s sister, who said
that complainant told her that complainant spilled hot tea on appellant, which caused
him to accidentally react by hitting her face with his hand.
A. The Physical Evidence
          The State contends that the trial court properly excluded the physical evidence
because appellant offered the entire documents and tape rather than properly redacted
versions that contained only admissible evidence. “When a trial judge is presented
with a proffer of evidence containing both admissible and inadmissible statements
and the proponent of the evidence fails to segregate and specifically offer the
admissible statements, the trial court may properly exclude all of the statements.” 
Willover v. State, 70 S.W.3d 841, 847 (Tex. Crim. App. 2002). The trial court does
not have a duty to make the proper proffer or objection for the parties. Id. at 845 n.5. 
We must uphold the ruling if it is reasonably supported by the record and is correct
under any theory of law applicable to the case. Id. at 845. Thus, we must not reverse
the trial court’s ruling that excludes evidence offered by appellant, even if the State
did not object at trial on the same grounds it asserts on appeal. See id.
           The letter, which is part of our appellant record under a bill of exception,
includes more than the impeaching statements by complainant denying this assault. 
The letter includes extraneous information denying that appellant ever hit or pushed
complainant, that complainant was depressed, that her state of mind was unstable, that
the couple was having financial trouble, that her mother “always had an eye on his
money,” and that appellant “is a very responsible husband and loving father.”
          The affidavit to dismiss the protective order is also part of our record under a
bill of exception. The affidavit contains extraneous hearsay information not related
to the contradictory statements made by complainant. For example, the affidavit
states that appellant misses complainant and their children, that the children miss
appellant, and that appellant cares about and loves complainant. 
          The tape is a conversation between complainant and an unnamed man. She
discusses the incident, the control her mother exerts over her life, the love she has for
her husband, and her desire not to divorce. There is also discussion of two extraneous
incidents not discussed at trial. First, she mentions that while she was staying with
a friend upon returning to Sugar Land, appellant called police stating that she had
been “held hostage” by the people with whom she was staying. She goes on to say
that she was pressured by those people to say that she was not being held hostage. 
Second, she says that she was pressured by her mother into telling the District
Attorney that appellant had abused drugs, but that it was untrue that he ever took
drugs.
          We hold that the trial court properly excluded the documents on the basis that
they contained inadmissible hearsay and extraneous information. Id. at 845–47.
          Having determined that the trial court did not err by excluding the documents
and audio tape, we next decide whether appellant’s sister’s testimony should have
been admitted. 
B. The Witness Testimony
           Appellant contends that the witness testimony was admissible under Rule 806
of the Texas Rules of Evidence that states, “When a hearsay statement . . . has been
admitted in evidence, the credibility of the declarant may be attacked, and if attacked
may be supported by any evidence which would be admissible for those purposes if
declarant had testified as a witness . . . .” Tex. R. Evid. 806. Thus, the State cannot
try a case based largely on complainant’s hearsay statements, without calling
complainant as a witness, and then legitimately object when appellant seeks to admit
complainant’s other inconsistent hearsay statements to impeach complainant. Marcel
v. State, 64 S.W.3d 677, 679 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). 
Evidence that a complainant later disavows his or her prior statements reflects on the
credibility of that complainant, and such evidence pertaining to credibility would be
admissible if complainant had testified as a witness. See Tex. R. Evid. 613(a);
Marcel, 64 S.W.3d at 679. Although impeachment evidence is admissible under Rule
806, the evidence offered can be utilized only for that single purpose. Head v. State,
4 S.W.3d 258, 261-62 (Tex. Crim. App. 1999); see also Schaffer v. State, 777 S.W.2d
111, 114 (Tex. Crim. App. 1989). If the evidence is submitted primarily to prove the
truth of the matter asserted, and not wholly for purposes of impeachment, the trial
court should exclude it. Bee v. State, 974 S.W.2d 184, 190 (Tex. App.—San Antonio
1998, no pet.).
          In the present case, complainant did not testify at the guilt-innocence stage of
the trial, but her statements to police and to her parents were admissible out-of-court
statements. Appellant is correct that he had a right to impeach complainant’s
credibility through other evidence, including hearsay. See Tex. R. Evid. 806; Marcel,
64 S.W.3d at 679. The trial court excluded testimony by appellant’s sister, to whom
complainant said that the assault was an accident. This inconsistent statement by
complainant reflects on complainant’s credibility and would have been admissible
had complainant testified as a witness. Marcel, 64 S.W.3d at 679. Thus it was error
for the trial court to exclude appellant’s impeachment evidence.
Harm Analysis
          Because the exclusion of appellant’s sister’s testimony was error, we must
determine how the trial court’s exclusion of the testimony likely affected the jury’s
decision. The Texas Rules of Appellate Procedure require appellate courts to
disregard any error not affecting substantial rights of an appellant. Tex. R. App. P.
44.2(b); Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Substantial rights
are affected only when the error has a significant and injurious effect on the jury. 
Johnson, 43 S.W.3d at 4. If there is no influence or only a slight effect on the finder
of fact, reversal is not required. See id. “In assessing the likelihood that the jury’s
decision was adversely affected by the error, the appellate court should consider
everything in the record, including any testimony or physical evidence admitted for
the jury’s consideration, the nature of the evidence supporting the verdict, the
character of the error, and how it might be considered in connection with other
evidence in the case.” Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). 
The reviewing court may also consider the jury instructions, the State’s theory, any
defensive theories, closing arguments, voir dire, and the degree of the State’s
emphasis on the error. Id. at 355–56.
          The evidence was undisputed that appellant struck complainant. The dispute
was whether the strike was intentional. Appellant and his mother presented testimony
that the strike was an accident caused by complainant’s spilling hot tea on appellant. 
Complainant’s version, introduced through her mother, a police officer, and a doctor, 
was that appellant punched her with his fist and then hit her on the head with a
telephone when she tried to call 911.
          Through cross-examination, appellant was able to show inconsistencies in the
version told by complainant through testimony that she told the officer and her
mother that after appellant punched her, appellant hit her with a telephone, but she
instead told the doctor that she hit a wall after she was punched. Appellant also
introduced inconsistent evidence about the time complainant was injured, whether it
was the night before she left for Carrollton or the day she left. Appellant further
introduced evidence that Officer Liedy’s offense report showed that complainant said
the bump was caused by appellant’s taking the telephone away from her to strike her
on the head with it. Thus, although appellant was precluded from presenting
evidence of a contradictory statement given by complainant to appellant’s sister, he
introduced other inconsistent statements by complainant. Furthermore, appellant
himself introduced evidence that he had struck complainant with a telephone, and
thus he acknowledged that he had assaulted complainant.
          In addition, the jury saw photographic evidence that was inconsistent with
appellant’s version of the events that he accidentally hit complainant without force
due to her spilling tea on him. The jury saw the photos of the injuries that depicted
complainant’s bruised face. Appellant attempted to explain what was shown in the
photos by stating that the marks were the result of complainant’s hitting herself and
of the use of a permanent marker to enhance the appearance of the injuries on
complainant’s face. Assuming appellant’s sister had been allowed to convey the
same story about the hot tea that appellant and his mother told, the physical evidence
was inconsistent with that story.
           The jury also heard a recorded voice mail message by appellant to complainant
apologizing for “hitting” her, without mentioning any claim of accident. The officer
who accompanied complainant to her house to gather belongings said complainant
seemed to fear appellant, who spoke in a very aggressive tone. Appellant also told
that officer that complainant’s family did not like him because he hit her, and
appellant did not qualify the statement by adding that the assault was an accident.
          We conclude that the excluded testimony was repetitious of the version of the
incident testified to by appellant and his mother, and that it was inconsistent with the
physical evidence. Furthermore, complainant’s version was impeached by
inconsistencies that were pointed out during cross-examination of the State’s
witnesses. We hold that the trial court’s exclusion of appellant’s impeachment
evidence did not substantially injure the rights of appellant and the error was
therefore harmless.
          We overrule appellant’s first issue.
Disallowing Questions About Reasons For Not Testifying
          In his third issue, appellant contends that the trial court improperly restricted
his ability to establish the reason for complainant’s refusal to testify. Appellant
asserts that “[t]he trial court’s admonishments to and actions against the complainant
were so strong that they violated appellant’s due process rights by intimidating the
complainant into refusing to answer the critical question of why she was claiming the
5th amendment.” Appellant contends that complainant was intimidated by the court’s
holding her in contempt, placing her in a holding cell, threatening her with
incarceration if she did not make a $500,000 bond, and improperly admonishing her
that if she answered any questions she would lose the entire right not to testify. In
short, appellant asserts that the trial court’s actions “drove the complainant from the
witness stand.” The State responds that the record reveals no evidence of
intimidation of complainant.
          A defendant’s due process rights may be violated if the trial court or prosecutor
coerces or intimidates a witness to the extent that it “drive[s] the witness off the
stand.” Cathey v. State, 992 S.W.2d 460, 464 (Tex. Crim. App. 1999). Whether or
not a witness was intimidated into invoking the right against self-incrimination
depends largely on the facts of the case as contained in the trial record. Davis v.
State, 831 S.W.2d 426, 438 (Tex. App.—Austin 1992, pet. ref’d). Due process rights
are infringed upon only in extreme cases of intimidation where admonishments are
so “unnecessarily strong” and “exerted such duress on the witness’s mind as to
preclude him from making a free and voluntary choice whether or not to testify.” 
Webb v. Texas, 409 U.S. 95, 97–98, 93 S. Ct. 351, 351 (1972). However, “a warning
to a witness made judiciously under circumstances that reasonably indicate a need for
it and which has the effect of merely preventing testimony that otherwise would likely
have been perjured does not violate a defendant’s right to due process.” Davis, 831
S.W.2d at 438 (quoting State v. Melvin, 388 S.E.2d 72, 79–80 (1990)); see also
Grayson v. State, 684 S.W.2d 691, 696 (Tex. Crim. App.1984); Boler v. State, 177
S.W.3d 366, 371–72 (Tex. App.—Houston [1st Dist.] 2005, no pet.).
          After complainant invoked her right against self-incrimination, the State gave
her transactional immunity. Complainant refused to testify, even after the trial court
held her in contempt. Appellant called complainant to the stand outside the presence
of the jury to make a bill of exception. The trial court admonished complainant that
the State gave her transactional immunity that would allow her to testify free from a
charge of perjury, but that “once you stop taking the Fifth Amendment, you’re always
open” to questioning. During the hearing, complainant consulted with her attorney,
who was present for the hearing. The record shows the following exchange:
[Appellant’s attorney]: Ms. Qureshi, are you taking the Fifth
Amendment because you fear possible
prosecution by the State because of what your
testimony would be or because Mr. Sohail has
frightened you or scared you into not
testifying?
 
[Complainant]:I respectfully refuse to answer any questions. 
I invoke the Fifth Amendment, as my right
against self-incrimination.

Appellant did not object to the trial court’s admonishment to the witness when
complainant first invoked her right not to testify.
          After several witnesses testified, appellant re-urged the trial court to allow him
to question complainant outside the presence of the jury about her reasons for
refusing to testify. Appellant wanted to question complainant without the trial court
admonishing the complainant that any testimony would open the door to everything. 
Appellant told the court that it was obligated to determine why the witness was
invoking the right not to incriminate herself to decide if the claim was valid. The
State responded that appellant’s attorney discussed trial testimony with complainant
in violation of the rule instructing witnesses not to discuss testimony. Appellant’s
attorney acknowledged that during the trial complainant asked him, “Did you hear my
mother testify? What did she say?” The attorney told complainant that her mother
testified that appellant struck her hundreds of times. Appellant’s attorney said that
an attorney may discuss testimony with a witness without violating the rule, that the
discussion with complainant did not include details, and the feelings by
complainant’s mother were well known prior to the discussion. The trial court
declined to give appellant another opportunity to question complainant’s reasons for
not testifying. 
          Contrary to appellant’s assertions, the trial court gave him the opportunity to
ask complainant why she was refusing to testify. What appellant complains of is the
trial court’s refusal to allow him to repeatedly ask for complainant’s reasons. We
cannot conclude the trial court erred by refusing to allow appellant to repeatedly
question complainant about her reasons for not testifying.
          Also contrary to appellant’s assertions, the trial court’s admonishments in no
way prevented complainant from testifying. Appellant’s contention that the court’s
threat of finding complainant to be in contempt caused her not to testify is
nonsensical. The trial court’s finding of contempt did not prevent her from testifying
but was in response to her refusal to abide by the order requiring her to testify. 
Complainant made a decision, on the advice of her counsel, to invoke the right
against self-incrimination before the trial court gave any admonition. Nothing in the
record suggests that the trial court made “unnecessarily strong” admonishments or
threats to complainant. See Webb, 409 U.S. at 97–98, 93 S. Ct. at 353. We conclude
the trial court’s admonishment did not push complainant to refuse to testify; rather
the admonishments were aimed at encouraging complainant to testify. See id. We
overrule appellant’s third issue. 
 

 Conclusion
          We affirm the trial court’s judgment.
 
 
                                                                        Elsa Alcala
                                                                        Justice 
Panel consists of Justices Taft, Keyes, and Alcala.
Publish. See Tex. R. App. P. 47.2(b).