NO. 07-09-0038-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 23, 2010
_____

PAUL D. TIMMS,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-417,789; HON. BRAD UNDERWOOD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Paul D. Timms was convicted of aggravated robbery under the law of parties and sentenced to life imprisonment. He challenges the conviction by contending, through six issues, that 1) the evidence was legally and factually insufficient to show that a theft was committed, 2) the evidence was legally and factually insufficient to show that the theft committed was a felony, and 3) he was denied the right to compulsory process

when the trial court refused to compel a co-conspirator to testify. We affirm the judgment.

*Background*

Appellant and his wife Tammy used and sold methamphetamine. One of their sources for the drug was Tommy Yugovich. Apparently, Yugovich supplied narcotics to others as well, and it was through one of these third party transactions that he received a counterfeit $20 bill. The bill eventually came into the possession of appellant who attempted to negotiate it. This resulted in his arrest. Believing that Yugovich helped create the predicament, appellant sought to have Yugovich pay half of the attorney's fees he would incur in defending himself. Yugovich refused. That refusal, however, did not assuage appellant's desire to foist some of the economic burden onto Yugovich.

While in jail, appellant engaged in phone conversations with various people, including his wife Tammy and Donnie Green. From these conversations arose a plan through which funds or drugs would be extracted from Yugovich. Those participating in the effort would be Green, Tammy, and Jerry Don Castle (Castle), and it unfolded on March 25, 2007.

Yugovich arranged to meet Tammy at Castle's home to sell her drugs. Before doing so, he stopped to buy the narcotics that he intended to sell. Then, he proceeded to the house with his girlfriend, Michelle Pierce (Michelle). When the two arrived, Castle phoned Tammy, who appeared shortly thereafter. Upon entering the house, Tammy sat next to Yugovich while Castle invited Michelle into an adjoining room to play pool. After Castle and Michelle exited, Tammy excused herself and went to the

2

bathroom. Yugovich was alone weighing or dividing the drugs he intended to sell when Green broke through a door with a metal t-post in hand. The t-post was used to strike Yugovich twice in the head. As he was being assaulted, Yugovich cried out. In response, Michelle returned to the room wherein Yugovich was located. Seeing what was happening, she attempted to hit Green with a pool cue. Yet, that did not stop him for he brought the t-post down upon her head. As Yugovich and Michelle were now on the floor, Green began "asking where is it, where is the shit?" Michelle replied, "you have it already" after noticing that he held the bag containing the drugs. Green then saw money on the floor, stooped, picked the sum up, and left. Once Green had gone, Tammy exited the bathroom and also left. Apparently, she did so in a hurry since she forgot to take her pocketbook.

Whether Green actually arrived at Castle's house with Tammy is unknown, as is whether she left with him. Nonetheless, the two were seen together earlier that evening. So too did they phone each other within minutes after the assault and engage in a joint telephone conversation with appellant the next day. During this latter conversation, they referred to the "home invasion" (*i.e.* the label ascribed by the media to the incident), and appellant could be heard telling Tammy that she ". . . had no reason, nothing to do with that now. All right." Then, appellant uttered "[a]ll right. So that's taken care of" to which Tammy says, "[a]s far as I know." Green too can be heard reassuring appellant about it being "taken care of." When Green eventually mentioned that "[t]hey got a pretty good description of that guy on the news," appellant cautioned that "they just need to chill out now."

3

The beating resulted in Yugovich suffering a skull fracture and permanent brain damage. Michelle's injuries were severe but less so. She needed only fourteen stitches to close the wound on her head.

Appellant was tried by a jury. It returned a verdict of guilty upon the charge of aggravated robbery. The trial court accepted the verdict and sentenced him to life.

*Issues 2 & 4 - Evidence of Responsibility*

We initially address appellant's issues two and four. Therein, he challenges the legal and factual sufficiency of the evidence to support his conviction as a party and to show that the value of the property taken by Green equaled or exceeded the value needed for the theft to be a felony. We overrule the issues.

The applicable standards of review are found in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006). We refer the parties to those cases and their progeny.

There are several ways in which one may be held criminally responsible for an offense of another. Two such ways are either 1) by soliciting, encouraging, directing, aiding, or attempting to aid the other person to commit the offense while acting with intent to promote or assist the commission of the offense or 2) by a co-conspirator committing a separate felony offense in furtherance of the unlawful purpose of the conspiracy which separate offense should have been anticipated as a result of the carrying out of the conspiracy. TEX. PENAL CODE ANN. §7.02(a)(2) & (b) (Vernon 2003). Each mode was included in the jury charge here. And to prove those elements, the State not only tendered the evidence we mentioned under "Background" but also

4

various recordings of telephone conversations. The latter were between appellant, Tammy, and Green and involved 1) appellant saying "that's all he needed to hear" in response to Tammy disclosing that Yugovich would not help pay for appellant's attorney, 2) appellant telling Tammy that he wanted to speak with Green, 3) appellant informing Tammy that he "was going [to] send [Green] in" after Tammy stole the dope from Yugovich, 4) Tammy saying "[a]ll right . . . send him over there," 5) Green uttering that the "deal with old boy, that it's a done deal," 6) appellant asking Green "[w]hat are you going to come up with" and Green answered, "[e]very bit of it . . . . I'm taking all of it," 7) appellant telling Green to let the "old boy" believe "that Tammy has got the cash money" to "tell him she's got $800 or whatever, plus whatever she owes him . . .," 8) Green replying "'[a]ll right . . . . we can do it that way then," 9) appellant directing Green to "let me talk to Tammy again so I can make her understand that," 10) appellant commenting that he did not want the episode to occur at his house, and 11) appellant recommending "that it . . . be done at [Castle's] house" instead since Castle had "been wanting to do the same thing to Tommy as what [appellant] wants to have done." This totality of evidence enabled one to rationally conclude beyond reasonable doubt that appellant was a party because he planned the entire event, drugs were to be taken from Yugovich as part of the plan, and the planned events actually transpired. That the participants used indefinite phrases such as "old boy" or that appellant was never heard expressly directing anyone to hit or rob Yugovich matters little. Guilt can be founded upon circumstantial evidence and rational deductions from such evidence. *Gardner v. State*, No. AP-75,582, 2009 Tex. Crim. App. LEXIS 1441 at *12 (Tex. Crim. App. October

5

21, 2009).  More importantly, a jury's verdict is not rendered factually deficient or manifestly unjust simply because it may be founded upon circumstantial evidence and deductions therefrom.

Nor does it matter that the State purportedly neglected to prove the value of the property taken.  Indeed, authority dictates that it need not prove a completed theft when attempting to prove robbery.  *Demouchette v. State*, 731 S.W.2d 75, 78 (Tex. Crim. App. 1986); *accord Wooden v. State*, 101 S.W.3d 542, 546 (Tex. App.--Fort Worth 2003, pet. ref'd) (stating that robbery can be established without proof that property was actually stolen).  All that is necessary is to show a theft was attempted. *Wooden v. State,* 101 S.W.3d at 546. This, in turn, means that it did not matter whether the drugs taken by Green had a value equal to or exceeding that needed for the theft to be deemed a felony.  In other words, if there was no need to establish that anything was taken, then there was no need to show that the items not taken had a particular value.

So, none of the contentions underlying the two issues we address have merit. Consequently, we again say that the verdict enjoys the support of both legally and factually sufficient evidence.

*Issues 1 & 3 – Evidence of Theft*

In his first and third issues, appellant attacks the legal and factual sufficiency of the evidence to show that a theft occurred.   We overrule the issues.

According to appellant, the prosecution failed to establish that the property taken by Green belonged to either Michelle or Yugovich or that the money Green

6

retrieved from the floor exceeded the value of the drugs.   Yet, as indicated above, there was no need to prove that an actual, completed theft occurred.   Thus, who owned the drugs that were taken (which the evidence rather clearly showed were Yugovich's) and whether their value exceeded the sum of money Tammy brought is immaterial.

*Issue Five*  – *Compel Testimony*

Next, appellant argues that the trial court erred in refusing to compel Green to testify, and in so refusing, it also denied him his right to compulsory process.   We overrule the issue.

No one questions the fact that Green committed acts for which he could be criminally prosecuted.   Furthermore, the record establishes that he invoked his Fifth Amendment right insulating him from self-incrimination per the advice of his legal counsel.   Since that particular right trumps a defendant's Sixth Amendment right to compulsory process, *Bridge v. State*, 726 S.W.2d 558, 567 (Tex. Crim. App. 1986); *Boler v. State*, 177 S.W.3d 366, 370-71 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd), and a trial court need not make any inquiry into the validity of one's reliance upon the Fifth Amendment when invoked per the advice of counsel, *Boler v. State*, 177 S.W.3d at 371, the trial court at bar did not err as suggested by appellant.

*Issue Six* – *Improper Charge*

Via his last issue, appellant contends that the verdict was legally and factually insufficient because the charge allowed the jury to convict on an "invalid" basis.   This

contention implicates the methods by which one can be held liable for the crimes of another. The supposed invalidity at issue concerned the second method discussed in issues two and four above, *i.e.* liability for the acts of a co-conspirator. According to appellant, the trial court was prohibited from submitting that method since the evidence failed to show that the value of property stolen equaled or exceeded that needed for the crime to be a felony. We overrule the issue.

As previously discussed, one can prove robbery without establishing that a completed theft occurred. *Demouchette v. State, supra*. So, the State was not obligated to prove the value of the object stolen. This, in turn, meant that the jury could legitimately find that Green committed robbery even if no one illustrated how much the drugs were worth. So, we have no choice but to reject this means of attacking the legal and factual sufficiency of the evidence.

Having overruled each issue, we affirm the judgment.


Brian Quinn
Chief Justice


Do not publish.