NO. 07-09-0038-CR

 

IN THE COURT OF
APPEALS

 

FOR THE SEVENTH
DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D

 

APRIL 23, 2010

______________________________

 

PAUL D. TIMMS, 

 

                                                                                                            Appellant

 

v.

 

THE STATE OF TEXAS, 

 

                                                                                                            Appellee

_________________________________

 

FROM THE 364TH
DISTRICT COURT OF LUBBOCK COUNTY;

 

NO. 2007-417,789;
HON. BRAD UNDERWOOD, PRESIDING

_______________________________

 

Memorandum Opinion

_______________________________

 

Before QUINN, C.J., and
CAMPBELL and PIRTLE, JJ.

            Paul D. Timms was convicted of aggravated robbery under
the law of parties and sentenced to life imprisonment.  He challenges the conviction by contending,
through six issues, that 1) the evidence was legally and factually insufficient
to show that a theft was committed, 2) the evidence was legally and factually
insufficient to show that the theft committed was a felony, and 3) he was
denied the right to compulsory process when the trial court refused to compel a
co-conspirator to testify.  We affirm the
judgment. 

            Background

            Appellant
and his wife Tammy used and sold methamphetamine.  One of their sources for the drug was Tommy
Yugovich.  Apparently, Yugovich supplied
narcotics to others as well, and it was through one of these third party
transactions that he received a counterfeit $20 bill.  The bill eventually came into the possession of
appellant who attempted to negotiate it. 
This resulted in his arrest. 
Believing that Yugovich helped create the predicament, appellant sought
to have Yugovich pay half of the attorney’s fees he would incur in defending
himself.  Yugovich refused.  That refusal, however, did not assuage
appellant’s desire to foist some of the economic burden onto Yugovich.  

            While in
jail, appellant engaged in phone conversations with various people, including
his wife Tammy and Donnie Green.  From
these conversations arose a plan through which funds or drugs would be
extracted from Yugovich.  Those participating
in the effort would be Green, Tammy, and Jerry Don Castle (Castle), and it unfolded
on March 25, 2007.  

            Yugovich
arranged to meet Tammy at Castle’s home to sell her drugs.  Before doing so, he stopped to buy the narcotics
that he intended to sell.  Then, he
proceeded to the house with his girlfriend, Michelle Pierce (Michelle).  When the two arrived, Castle phoned Tammy,
who appeared shortly thereafter.  Upon
entering the house, Tammy sat next to Yugovich while Castle invited Michelle
into an adjoining room to play pool.  After
Castle and Michelle exited, Tammy excused herself and went to the
bathroom.  Yugovich was alone weighing or
dividing the drugs he intended to sell when Green broke through a door with a
metal t-post in hand.  The t-post was
used to strike Yugovich twice in the head. 
As he was being assaulted, Yugovich cried out.  In response, Michelle returned to the room
wherein Yugovich was located.  Seeing
what was happening, she attempted to hit Green with a pool cue.  Yet, that did not stop him for he brought the
t-post down upon her head.  As Yugovich
and Michelle were now on the floor, Green began “asking where is it, where is
the shit?”  Michelle replied, “you have
it already” after noticing that he held the bag containing the drugs.  Green then saw money on the floor, stooped,
picked the sum up, and left.  Once Green had
gone, Tammy exited the bathroom and also left. 
Apparently, she did so in a hurry since she forgot to take her
pocketbook.

            Whether Green actually arrived at Castle’s house with
Tammy is unknown, as is whether she left with him.  Nonetheless, the two were seen together earlier
that evening.  So too did they phone each
other within minutes after the assault and engage in a joint telephone
conversation with appellant the next day. 
During this latter conversation, they referred to the “home invasion” (i.e. the label ascribed by the media to the
incident), and appellant could be heard telling Tammy that she “. . . had no
reason, nothing to do with that now.  All
right.”  Then, appellant uttered “[a]ll
right.  So that’s taken care of” to which
Tammy says, “[a]s far as I know.”  Green
too can be heard reassuring appellant about it being “taken care of.”  When Green eventually mentioned that “[t]hey
got a pretty good description of that guy on the news,” appellant cautioned
that “they just need to chill out now.”          

            The
beating resulted in Yugovich suffering a skull fracture and permanent brain damage.  Michelle’s injuries were severe but less
so.  She needed only fourteen stitches to
close the wound on her head.

            Appellant
was tried by a jury.  It returned a
verdict of guilty upon the charge of aggravated robbery.  The trial court accepted the verdict and
sentenced him to life.    

            Issues
2 & 4 - Evidence of Responsibility 

            We
initially address appellant’s issues two and four.  Therein, he challenges the legal and factual
sufficiency of the evidence to support his conviction as a party and to show
that the value of the property taken by Green equaled or exceeded the value
needed for the theft to be a felony.  We
overrule the issues.

            The applicable
standards of review are found in Jackson v. Virginia, 443 U.S. 307, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979) and Watson v. State, 204 S.W.3d 404
(Tex. Crim. App. 2006).  We refer the
parties to those cases and their progeny.  


            There
are several ways in which one may be held criminally
responsible for an offense of another.  Two
such ways are either 1) by soliciting, encouraging, directing, aiding, or
attempting to aid the other person to commit the offense while acting with
intent to promote or assist the commission of the offense or 2) by a
co-conspirator committing a separate felony offense in furtherance of the
unlawful purpose of the conspiracy which separate offense should have been
anticipated as a result of the carrying out of the conspiracy.  Tex. Penal
Code Ann. §7.02(a)(2) & (b) (Vernon 2003).  Each mode was included in the jury charge
here.  And to prove those elements, the
State not only tendered the evidence we mentioned under “Background” but also various
recordings of telephone conversations. 
The latter were between appellant, Tammy, and Green and involved 1)
appellant saying “that’s all he needed to hear” in response to Tammy disclosing
that Yugovich would not help pay for appellant’s attorney, 2) appellant telling
Tammy that he wanted to speak with Green, 3) appellant informing Tammy that he
“was going [to] send [Green] in” after Tammy stole the dope from Yugovich, 4)
Tammy saying “[a]ll right . . . send him over there,” 5) Green uttering that
the “deal with old boy, that it’s a done deal,” 6) appellant asking Green
“[w]hat are you going to come up with” and Green answered, “[e]very bit of it .
. . . I’m taking all of it,” 7) appellant telling Green to let the “old boy”
believe “that Tammy has got the cash money” to “tell him she’s got $800 or
whatever, plus whatever she owes him . . .,” 8) Green replying “’[a]ll right .
. . . we can do it that way then,” 9) appellant directing Green to “let me talk
to Tammy again so I can make her understand that,” 10) appellant commenting
that he did not want the episode to occur at his house, and 11) appellant recommending
“that it . . . be done at [Castle’s] house” instead since Castle had “been
wanting to do the same thing to Tommy as what [appellant] wants to have
done.”  This totality of evidence enabled
one to rationally conclude beyond reasonable doubt that appellant was a party
because he planned the entire event, drugs were to be taken from Yugovich as
part of the plan, and the planned events actually transpired.  That the participants used indefinite phrases
such as “old boy” or that appellant was never heard expressly directing anyone
to hit or rob Yugovich matters little. 
Guilt can be founded upon circumstantial evidence and rational
deductions from such evidence.  Gardner v. State, No. AP-75,582, 2009
Tex. Crim. App. Lexis 1441 at *12
(Tex. Crim. App. October 21, 2009).  More
importantly, a jury’s verdict is not rendered factually deficient or manifestly
unjust simply because it may be founded upon circumstantial evidence and
deductions therefrom.    

            Nor
does it matter that the State purportedly neglected to prove the value of the
property taken.  Indeed, authority
dictates that it need not prove a completed theft when attempting to prove
robbery.  Demouchette v. State, 731 S.W.2d 75, 78 (Tex. Crim. App. 1986); accord Wooden v. State, 101 S.W.3d 542,
546 (Tex. App.--Fort Worth 2003, pet. ref’d) (stating that robbery can be
established without proof that property was actually stolen).  All that is necessary is to show a theft was
attempted.  Wooden v. State, 101 S.W.3d at 546. This, in turn, means that it did not matter whether the drugs
taken by Green had a value equal to or exceeding that needed for the theft to
be deemed a felony.  In other words, if
there was no need to establish that anything was taken, then there was no need
to show that the items not taken had a particular value.

            So,
none of the contentions underlying the two issues we address have merit.  Consequently, we again say that the verdict
enjoys the support of both legally and factually sufficient evidence. 

             Issues 1 & 3 – Evidence of Theft

            In
his first and third issues, appellant attacks the legal and factual sufficiency
of the evidence to show that a theft occurred. 
We overrule the issues.

             According to appellant, the prosecution failed
to establish that the property taken by Green belonged to either Michelle or
Yugovich or that the money Green retrieved from the floor exceeded the value of
the drugs.  Yet, as indicated above,
there was no need to prove that an actual, completed theft occurred.  Thus, who owned the drugs that were taken
(which the evidence rather clearly showed were Yugovich’s) and whether their
value exceeded the sum of money Tammy brought is immaterial. 

            Issue Five 
– Compel Testimony

            Next,
appellant argues that the trial court erred in refusing to compel Green to
testify, and in so refusing, it also denied him his right to compulsory
process.  We overrule the issue.

            No one
questions the fact that Green committed acts for which he could be criminally
prosecuted.  Furthermore, the record
establishes that he invoked his Fifth Amendment right insulating him from self-incrimination
per the advice of his legal counsel. 
Since that particular right trumps a defendant’s Sixth Amendment right
to compulsory process, Bridge v. State,
726 S.W.2d 558, 567 (Tex. Crim. App. 1986); Boler
v. State, 177 S.W.3d 366, 370-71 (Tex. App.–Houston [1st Dist.] 2005, pet. ref’d),
and a trial court need not make any inquiry into the validity of one’s reliance
upon the Fifth Amendment when invoked per the advice of counsel, Boler v. State, 177 S.W.3d at 371, the
trial court at bar did not err as suggested by appellant.      

            

 

Issue Six –
Improper Charge

            Via his
last issue, appellant contends that the verdict was legally and factually
insufficient because the charge allowed the jury to convict on an “invalid”
basis.  This contention implicates the
methods by which one can be held liable for the crimes of another.  The supposed invalidity at issue concerned
the second method discussed in issues two and four above, i.e. liability for the acts of a co-conspirator.  According to appellant, the trial court was
prohibited from submitting that method since the evidence failed to show that
the value of property stolen equaled or exceeded that needed for the crime to
be a felony.  We overrule the issue.

            As
previously discussed, one can prove robbery without establishing that a
completed theft occurred.  Demouchette v. State, supra.  So, the State was not obligated to prove the
value of the object stolen.  This, in
turn, meant that the jury could legitimately find that Green committed robbery even
if no one illustrated how much the drugs were worth.  So, we have no choice but to reject this
means of attacking the legal and factual sufficiency of the evidence.     

            Having overruled each issue, we
affirm the judgment.

 

 

 

                                                                                    Brian
Quinn 

                                                                                    Chief
Justice

 

Do not publish.

 

                            






amily:"WP TypographicSymbols"'>@ the balcony, dusted off his hands, grabbed the DVD player, put it in
the bag, and walked away.  The neighbor
said appellant was alone when he saw him. 


The neighbor followed appellant, watching him walk along a fence to the
street corner, where he stood with another man near a Wendy’s restaurant.
Appellant had the duffel bag on his shoulder. 
It appeared to the neighbor to have heavy objects in it.  The neighbor identified appellant in a photo
spread and adamantly maintained his in-court identification of appellant as the
burglar at trial.

Police were notified and were directed to Wendy’s.  The responding officer testified she saw
appellant on her arrival at the restaurant. 
She noted he met the description she was provided.  As she walked toward him, she saw appellant
place the black duffel bag in bushes. 
Another man also was standing near appellant, holding a bow and arrow in
his hand.  

The victim testified that some of
the items stolen from his apartment included a video camera, a cell phone, a
DVD player, a stereo and an amplifier, and a cross bow.  The black bag appellant had near him when he
was detained contained a black camera case, a cell phone and a video
camera.  The cross bow held by the other
man was identified at trial by the victim as belonging to him.  Other items were missing but never recovered.  

A fingerprint examiner testified
fingerprints found on a glass table in the victim’s apartment belonged to
appellant.  








Appellant presented at trial his theory that if he was guilty of
anything, it was theft by receiving stolen property, not burglary of a
habitation.  His theory challenges the
neighbor’s identification of him as the burglar, and focuses on the other man
seen with him in the Wendy’s parking lot. 
The record reflects the neighbor described the burglar to police as a
5’10” man, weighing 150-170 pounds.  A
police officer testified at trial that the man seen with appellant is 5’10”
tall and weighs 160 pounds.  Appellant is
a 230-pound, 5'3" man.  The neighbor
also told police the burglar was wearing shorts and a white tank top.  The record reflects appellant was wearing
shorts and a tank top when he was located in the Wendy’s parking lot but the
record also indicates the other man was dressed similarly.  Appellant also challenged the photo spread
from which the neighbor identified appellant as the burglar, indicating that
none of the other men shown were similar in appearance to appellant.   

Consistent with the indictment, the court’s charge authorized the jury
to find appellant guilty of burglary because he entered the apartment without
its owner’s consent with the intent to commit theft, or because he entered the
apartment without its owner’s consent and then committed or attempted to commit
theft.[2]  Appellant’s request that the jury also be
charged on a lesser-included offense of theft was denied.

 Analysis

As pertinent to this case, a person commits burglary of a habitation
if, without the effective consent of the owner, he (1) enters a habitation with
intent to commit a felony, theft, or an assault, or (2) enters a habitation and
commits or attempts to commit a felony, theft, or an assault.  Tex. Penal Code Ann. ' 30.02(a)(1), (3) (Vernon 1999).  A person commits a theft if he appropriates
property, without the owner=s effective consent, with intent to deprive the owner of the
property.  Tex. Penal
Code Ann. ' 31.03 (Vernon 2007).  

A two-step analysis determines whether a charge on a lesser-included
offense must be given.  Hall v. State, 225 S.W.3d 524, 535 (Tex.Crim.App.
2007); Skinner v. State, 956 S.W.2d 532, 543 (Tex.Crim.App.
1997).  See also Arevalo v. State, 943 S.W.2d 887, 889 (Tex.Crim.App. 1997); Royster
v. State, 622 S.W.2d 442 (Tex.Crim.App.
1981).  First, the lesser-included
offense must be included within the proof necessary to establish the offense
charged, and, second, some evidence must exist in the record that would permit
a jury rationally to find that if the defendant is guilty, he is guilty only
of the lesser offense.  Hall, 225 S.W.3d at 535-36; Skinner, 956 S.W.2d at
543, citing Rousseau v. State, 855 S.W.2d 666, 673 (Tex.Crim.App.
1993); Moore v. State, 969 S.W.2d 4 (Tex.Crim.App.
1998). See also Terry v. State,
296 S.W.3d 905, 906 (Tex.App.—Amarillo 2009, no pet.)
(the offense of criminal trespass may be a
lesser-included offense of burglary); Phillips
v. State, 178 S.W.3d 78, 82 (Tex.App.—Houston
[1st Dist.] 2005, pet. ref’d) (the
offenses of theft and criminal trespass can be lesser-included offenses of
burglary). 








In deciding whether the issue of a lesser-included offense is raised,
we look to all the evidence presented at trial. 
Havard v. State, 800 S.W.2d 195, 216 (Tex.Crim.App.
1989); Grotti v. State, 209 S.W.3d 747,
773 (Tex.App.BFort Worth 2006), aff=d, 2008 WL 2512832 (Tex.Crim.App. 2008).  The credibility of the evidence and whether
it is controverted or conflicts with other evidence
may not be considered.  Havard, 800 S.W.2d at 216.  It is not enough that the jury may disbelieve
crucial evidence pertaining to the greater offense.  Skinner, 956 S.W.2d
at 543.  Rather, there must be
some evidence directly germane to a lesser-included offense for the fact-finder
to consider before the instruction is warranted.  Id. The evidence must establish the lesser-included offense as a valid
rational alternative to the charged offense. 
Segundo v. State, 270 S.W.3d 79, 91 (Tex.Crim.App.
2008), citing Feldman v. State, 71 S.W.3d 738, 750 (Tex.Crim.App.
2002). A lesser included offense may be raised if evidence either affirmatively
refutes or negates an element establishing the greater
offense, or the evidence on the issue is subject to two different
interpretations, and one of the interpretations negates or rebuts an element of
the greater.  Schweinle v. State, 915 S.W.2d 17,
19 (Tex.Crim.App.1996), citing Saunders
v. State, 840 S.W.2d 390 (Tex.Crim.App. 1992).


            To
address appellant’s issue, we express no opinion whether proof of theft
necessarily would be included within the proof of the charged offense of
burglary under appellant’s indictment, so as to satisfy the first prong of the
required analysis, but proceed directly to consideration of the second prong of
the test.  Even assuming the first prong
of the test was satisfied here,[3]
we cannot agree with appellant that the evidence before the jury established
his guilt of theft as a rational alternative to burglary.

            Appellant’s
theory is that the evidence raises the possibility he did not take the items
contained in the bag he was holding from the apartment but received them from
the other man police saw with him at the Wendy’s restaurant, knowing the
property had been stolen by another.[4]
He points to evidence the other man was holding the cross bow, which was
part of the stolen property, and evidence the neighbor’s original description
of the burglar fit the other man better than it fit appellant.  He points also to evidence many of the items
missing from the apartment were never recovered, arguing that suggests the
involvement of another person in the burglary. 
Finally, he argues the discrepancies between his height and weight and
the neighbor’s original description of the burglar rationally could have led
the jury to find the fingerprint evidence to be mistaken and to disregard the neighbor’s
testimony identifying him as the man he saw leaving the apartment.   

            Appellant’s
argument amounts primarily simply to pointing out reasons the jury could have
disbelieved the State’s evidence he committed the burglary. Skinner, 956 S.W.2d at 543.  Evidence
some stolen items were not in his possession and were never recovered, and
evidence the neighbor gave varying descriptions of the burglar are not evidence
directly germane to appellant’s potential guilt of theft by knowing receipt of
stolen items.  Such evidence does not
support a lesser-included offense instruction of theft.

Evidence the other man police saw with
appellant bore similarity to the neighbor’s description and was holding the
stolen cross bow may come closer to supporting appellant’s theory.  But even assuming that evidence could be
taken to suggest appellant had received the items he was holding from the other
man, in order to constitute a rational alternative to his guilt of burglary,
appellant’s theory required evidence he knew the items were stolen.  Such evidence is missing entirely from
appellant’s argument, and from the record. See Fonseca v. State, No.
05-08-00633-CR, 2009 Tex.App. LEXIS
9314 (Tex.App.—Dallas Dec. 8, 2009, no pet.) (mem. op., not designated for publication) (similarly finding absence of knowledge that television was
stolen precluded defendant’s guilt only of theft).  For these reasons, we cannot agree the
evidence to which appellant points would have allowed the jury rationally to
find appellant guilty, if at all, only of theft by knowing receipt of stolen
items.  The evidence does not support
appellant’s guilt of theft as a “valid rational alternative” to his guilt of
burglary.  Segundo, 270 S.W.3d at 79.

  We overrule appellant=s sole point of error and affirm the judgment of the trial court.













                                                                                                                                                                                                                                                            James
T. Campbell

                                                                                                            Justice

 

 

 

Do not publish.

 











[1]
See Tex. Penal Code Ann. ' 30.02(a)(1), (a)(3)
(Vernon 1999).  This is a second degree
offense punishable by imprisonment for a term of not less than two years or
more than 20 years and a fine not to exceed $10,000.  Tex. Penal Code Ann. ' 30.02(c)(2) (Vernon 1999);
Tex. Penal Code Ann. ' 12.33 (Vernon 2003).





[2] We note the application paragraph of
the court’s charge is very similar to the application paragraph in Langs v. State, 183 S.W.3d 680 (Tex.Crim.App. 2006), and contains the same “ambiguity” the
Court of Criminal Appeals noted in its opinion there.  Id.
at 684 n.4, 5. As in Langs, the parties do not suggest any confusion resulted from the
paragraph’s language.  





[3]
Theft as
a lesser-included offense would be possible only as to a burglary committed in
the manner described in section 30.02(a)(3) of the
Penal Code.  Langs, 183 S.W.3d at 686. 





 

[4]
See Tex.
Penal Code Ann. § 31.03(b)(2) (Vernon 2009) (providing
appropriation of property is unlawful if “the property is stolen and the actor
appropriates the property knowing it was stolen by another”) .