Affirmed and Opinion filed January 11, 2011.



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00293-CR



 

ARIES CADOREE, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

 



On Appeal from the 174th
District Court 

Harris County, Texas

Trial Court Cause No. 1172496



 

OPINION

Appellant,
Aries Cadoree, Jr., was convicted of possession with intent to deliver cocaine,
the aggregate weight of which was at least four grams but less than 200 grams,[1]
and sentenced to thirty years’ imprisonment.  In nine issues, he contends: 

1.     
The trial court erred by (a) denying
his motion to suppress, (b) including the incorrect burden of proof in a jury
instruction, (c) allowing a witness to refuse to testify, (d) denying his
motion for mistrial based on jury misconduct, and (e) failing to conduct a
hearing on his motion for new trial;

2.     
The evidence is factually
insufficient to support jury findings that he voluntarily consented to a search
of his bedroom and possessed cocaine;

3.     
He received ineffective assistance
of counsel; and

4.     
The cumulative effect of the
foregoing alleged errors deprived him of a fair trial.

We
affirm.  

I.   Background

In June
2008, Officer Ashraf was dispatched to a residence in response to a domestic
disturbance call.  When Officer Ashraf arrived, he noticed a female who
“appeared real scared . . . [and] was crying.”  Although Officer Ashraf never
testified regarding the female’s name, other evidence identified her as Linda
Swinney.  She was at her neighbor’s house when Officer Ashraf arrived.  Swinney
was too “scared” to speak with Officer Ashraf, so he “gave her a hug” and asked
her to step outside.  At this point, Swinney appeared “[r]eal shaky . . . [and]
[v]ery nervous.”  Swinney told Officer Ashraf that “there is a guy in my house
that I want out of my house.  I’m very scared of him.  He’s scaring me and he’s
selling drugs out of my house.  I want him out.”  

Officer
Ashraf suggested that he and Swinney walk to her house, which was nearby.  However,
Swinney “was really scared and kept telling me, never mind, I don’t want to do
this, . . .  I’m scared.”  Officer Ashraf eventually convinced Swinney that he would
help, and they proceeded to her house.  When they arrived at her house, Swinney
told Officer Ashraf that “there is a male in there.  I want him out of my
house.  I’m scared of him.  That’s why I called the police.”  She also
repeatedly stated appellant’s name, “Cadoree.” 

According
to Officer Ashraf, Swinney opened the door and invited him inside her house. 
However, Swinney testified that she did not give verbal consent for Officer
Ashraf to search her house.  Once inside, Officer Ashraf saw appellant and
another man exit a bedroom and walk down a hall.  To insure officer safety, Officer
Ashraf instructed the men to exit the house.  After they exited the house, Officer
Ashraf noticed a “big wad” in appellant’s front pocket.  Officer Ashraf performed
a pat-down search of appellant and discovered a large amount of cash in his
pocket.  Officer Ashraf asked appellant where he acquired the cash and whether
he was employed.  Appellant did not respond.  Officer Ashraf then returned the
cash to appellant and placed him in the back of the patrol car.  The other man
was patted-down and released.  Officer Ashraf testified that appellant was not
handcuffed or placed under arrest at that time but was placed in the patrol car
“[b]ecause the disturbance call was regarding [appellant.]”  However, Swinney
testified that appellant was in handcuffs when he was brought out of the house. 


According
to Officer Ashraf, both appellant and Swinney informed him that appellant lived
in the house.  Officer Ashraf asked appellant, “[I]s there anything on [your] possession
or anything in the house in [your] room I should know about[?]”  According to
Officer Ashraf, appellant responded, “[N]o, you can check it.”  Before entering
the house, Officer Ashraf asked, “[Y]ou sure there is nothing on you or in your
room that I need to know about[?],” and appellant again stated, “[N]o, you can
go ahead and search it.”  It is undisputed that appellant did not sign a
written-consent form.  Officer Ashraf testified that, before he conducted his
search, appellant “became real irate and scream[ed] at [Swinney,] ‘[W]hat are you
doing, what are you doing.’”

Officer
Ashraf entered the house and proceeded to the bedroom from which he had earlier
witnessed appellant exit.  Once in the room, he smelled “a strong odor of marijuana”
and found a marijuana cigarette.  He also found razor blades and plastic bags
in plain view, as well as a broken electronic scale.  He opened a jewelry box
and found four bags containing a substance he believed to be narcotics.  Laboratory
tests established that the bags contained over forty-two ounces of cocaine.  Officer
Ashraf found male clothes in the room which, in his opinion, would fit appellant. 
He also testified that Swinney asked him to search her room because “she had a
scale that belonged to [appellant.]”  This scale was found and seized.  Officer
Ashraf also testified that Swinney told him a glass pipe was in her room.  

II.   Motion to Suppress Regarding Consent to Search

            In his first
issue, appellant contends the trial court erred by denying his motion to
suppress the fruits of Officer Ashraf’s search.  We review a trial court’s
ruling on a motion to suppress
under a bifurcated standard of review, giving almost total deference to the
trial court’s finding of historical facts and reviewing de novo the
trial court’s application of the law.  See
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).[2] 
The deference is particularly high if the trial court’s findings are based upon
an evaluation of credibility and demeanor.  Id.  When the trial court
has not made findings of fact, we
imply findings that support the court’s ruling if the findings are supported by
the record.  State v. Ross, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

Appellant
first contends that alleged inconsistencies in Officer Ashraf’s testimony
tainted his credibility, rendering his testimony regarding Swinney’s and
appellant’s consent unbelievable.  We conclude these “inconsistencies” do not
affect the great deference we must afford the trial court’s factual findings.  See
Guzman, 955 S.W.2d at 89.

Appellant
argues that Officer Ashraf was not credible because he (1) initially testified
he contacted his supervisor before he entered the house but later
testified he called his supervisor after entering the house, (2) repeatedly
referred to the broken scale recovered in appellant’s bedroom despite the fact
that he found a functioning scale in Swinney’s bedroom, (2) never testified
that “Linda Swinney” was the woman he assisted, (3) did not “remember” until
re-direct-examination that he also recovered a glass pipe in Swinney’s bedroom,
and (4) initially testified appellant possessed $2,500 in cash but later
clarified the narcotics found were worth $2,500 and appellant possessed
$1,245.  However, these aspects of Officer Ashraf’s testimony were not relevant
to whether he received voluntary consent to search the house, and it was the
trial court’s bailiwick to determine whether these aspects affected Officer
Ashraf’s credibility.  Accordingly, we defer to the trial court’s implied finding
that Officer Ashraf was credible.  See Martinez v. State, 17 S.W.3d 677,
683 (Tex. Crim. App. 2000) (expressing trial court free to disbelieve testimony
from defendant’s family that they did not consent to search).

Next, appellant
argues that Officer Ashraf’s search was merely a protective sweep during which
he could recover only contraband in plain view.  We disagree.  Nothing in Officer
Ashraf’s testimony supports an inference that Swinney or appellant limited the
scope of their consent to search.  Thus, the consent extended to concealed
areas, such as the jewelry box in which the cocaine was discovered.  See,
e.g., State v. Garrett, 177 S.W.3d 652, 657–58 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (holding defendant’s failure to limit the scope of
his consent to search vehicle allowed officer to search concealed areas); James
v. State, 72 S.W.3d 35, 42–43 (Tex. App.—Texarkana 2001, pet.
ref’d) (holding reasonable person would have understood defendant’s general
consent to search extended to concealed areas because defendant knew police
were looking for narcotics).

Additionally,
appellant contends that Swinney revoked her consent when she told Officer
Ashraf, “[N]ever mind, I don’t want to do this, . . . I’m scared.”  See
Valtierra v. State, 310 S.W.3d 442, 450 (Tex. Crim. App. 2010)
(“[P]erson who consents to the entry may specifically limit or revoke
his consent.”).  However, even assuming that this statement
was a revocation of her initial consent (and assuming appellant had a right to
complain regarding Swinney’s consent or lack thereof), Swinney subsequently consented
because she (1) told Officer Ashraf she wanted the “male” out of her house, (2)
opened her door and invited Officer Ashraf inside, and (3) accompanied him inside
during the search and led him to her room where he recovered a scale and pipe. 


Finally,
appellant argues the trial court erred by implicitly finding he voluntarily
consented to the search.  Whether consent was voluntary involves a question of
fact that is determined from the totality of the circumstances.  Gutierrez
v. State, 221 S.W.3d 680, 686–87 (Tex. Crim. App. 2007).  In the context of
a motion to suppress, the State must prove voluntary consent by clear and
convincing evidence.  See Carmouche v. State, 10 S.W.3d 323, 331 (Tex.
Crim. App. 2000); Lalande v. State, 676 S.W.2d 115, 117
n.4 (Tex. Crim. App. 1984).  In order to be voluntary, consent must “not be
coerced, by explicit or implicit means, by implied threat or covert force.”  Carmouche,
10 S.W.3d at 331 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 228
(1973)).  Consent must be shown to be positive and unequivocal.  Allridge v.
State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).  We consider the
following factors in determining voluntariness: the defendant’s age, education,
and intelligence; the length of detention; any constitutional advice given to
the defendant; the repetitiveness of questioning; and the use of physical punishment.
 See Reasor v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).  We
also consider whether appellant was in custody, handcuffed, or had been
arrested at gunpoint, whether Miranda warnings were given, and whether
the defendant had the option to refuse to consent.  See Flores v. State,
172 S.W.3d 742, 749–50 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  In
examining the totality of the circumstances surrounding consent to search, the
trial court should consider the circumstances before the search, reaction of
the accused to pressure, and any other factor deemed relevant.  Reasor,
12 S.W.3d at 818.     

According
to Officer Ashraf, appellant had been detained when he was inside the house,
then patted-down and questioned about his possession of a large amount of
cash.  Appellant did not receive Miranda warnings before he was placed in
the backseat of the patrol car.  Consequently, appellant was at least detained
when he provided consent.  Nevertheless, nothing indicates that Officer Ashraf
was hostile or threatening toward appellant or that Officer Ashraf had drawn
his firearm.  Additionally, Officer Ashraf never asked appellant for consent
to search the house.  Instead, Officer Ashraf merely inquired whether there
was anything in appellant’s room that Officer Ashraf “should know about,” to
which appellant responded by giving Officer Ashraf permission to search his
room.  Accordingly, we conclude there is clear and convincing evidence
supporting the trial court’s determination that appellant consented voluntarily. 
See Johnson v. State, 68 S.W.3d 644, 654 (Tex. Crim. App.
2002) (determining defendant consented voluntarily despite being in custody and
not provided Miranda warnings).   We hold the trial court did not err by
denying appellant’s motion to suppress.  Appellant’s first issue is overruled.

III.   Jury Instruction on Voluntary Consent

In his
second issue, appellant contends the trial court erroneously instructed the
jury on the State’s burden of proof to establish that the State did not
illegally obtain evidence.  Specifically, in the article 38.23(a) instruction
included in the charge, the jury was asked to decide whether appellant gave
voluntary consent by “clear and convincing evidence” instead of “beyond a
reasonable doubt.”  See Tex. Code. Crim. Proc. Ann. art. 38.23(a) (West
2005).  The State concedes that “beyond a reasonable doubt” is the burden of
proof required under article 38.23(a).  See id.; see also Peterson v.
State, 727 S.W.2d 125, 126 (Tex. App.—San Antonio 1987, no pet.)
(citing Lalande, 676 S.W.2d at 117 n.4).  It is also undisputed
that appellant did not object to the instruction.  Nevertheless, we conclude no
error occurred because appellant was not entitled to the article 38.23(a)
instruction.   

There
are three requirements that must be met before a trial court is required to the
include an article 38.23(a) instruction in the jury charge: (1) the evidence
heard by the jury must raise an issue of fact regarding whether evidence was illegally
obtained; (2) the evidence on that fact must be affirmatively contested; and
(3) the contested factual issue must be material to the lawfulness of the
challenged conduct in obtaining the evidence.  Madden v. State, 242
S.W.3d 504, 510 (Tex. Crim. App. 2007).  Thus, to raise a disputed fact
warranting an article 38.23(a) instruction, there must be some affirmative
evidence that contravenes the existence of that fact.  Id. at 513.  A
cross-examiner’s questions do not create a conflict in the evidence, although
the witness’s answers to those questions might.  Id.  Furthermore, the
jury’s right to disbelieve a witness’s testimony in whole or part does not
create a factual dispute.  See Shpikula v. State, 68 S.W.3d 212, 217
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  

During
the charge conference, the State agreed that an article 38.23(a) instruction
was required because a disputed fact issue existed regarding whether Swinney
consented to the search; i.e., Officer Ashraf testified Swinney provided
consent, but Swinney testified she did not.  However, despite this dispute,
appellant lacked standing to complain about Swinney’s lack of consent because
nothing in the record supports a finding that he had a reasonable expectation
of privacy in any part of the house except his bedroom.  See Neal v. State,
256 S.W.3d 264, 284 (Tex. Crim. App. 2008) (concluding defendant who lacked
standing was not entitled to article 38.23(a) instruction).  Thus, appellant
was entitled to an article 38.23(a) instruction only if there was a factual
dispute relative to whether he provided voluntary consent to search his bedroom.

Officer
Ashraf’s testimony that he led appellant out of the house, patted-him-down, discovered
the large wad of cash, then placed him in the patrol car, was not contradicted. 
However, there was a dispute concerning whether appellant was handcuffed when
he was placed in the patrol car.  According to Officer Ashraf, the following
exchange occurred after appellant was placed in the patrol car:

[Prosecutor:]  
So what do you do after you place the defendant in the back of the car?

[Officer
Ashraf:]   I talked to the defendant.  I asked him is there anything on his
possession or anything in the house in his room I should know about?

[Prosecutor:]  
What did he say?

[Officer
Ashraf:]   He tells me no, you can check it.

[Prosecutor:]  
So he gave you permission to check his room?

 [Officer
Ashraf:]   That’s correct.

. . . 

[Prosecutor:]  
So you get permission to look in his room.  And do you, in fact, go look in his
room?

[Officer
Ashraf:]   Yes, I asked him twice.  Before I actually go in the house I say,
hey, you sure there is nothing on you or in your room that I need to know
about.  He said no, you can go ahead and search it.

[Prosecutor:]  
Did you go and search his room?

[Officer
Ashraf:]   I asked him once again if he was sure there was nothing in there and
I did search his room.

Even
accepting as true the evidence that appellant was wearing handcuffs while in
the patrol car, nothing supports a finding that appellant consented as a result
of actual or implied coercion or duress.  Instead, after Officer Ashraf asked
if there was “anything . . . in his room,” appellant invited Officer Ashraf to
search his room.  The rationale for appellant’s invitation is not discernible
from the record (he may have believed that by inviting the officer to search
his room, the officer would be satisfied there were no narcotics and cease his
investigation before actually searching the room).  However, nothing shows that
he was in any manner threatened or compelled to provide consent.  Therefore,
there was no fact issue regarding whether appellant’s consent was voluntary.  See
Carmouche, 10 S.W.3d at 331 (explaining that consent is involuntary if it
is “coerced, by explicit or implicit means,
by implied threat
or covert force” (quoting Schneckloth, 412 U.S. at 228)).

            Determining
there was no fact issue relative to the voluntariness of appellant’s consent
does not end our analysis; we must also determine whether there was a dispute
relative to whether appellant actually gave consent.  For example, if some
affirmative evidence contradicted Officer Ashraf’s testimony that appellant
consented, appellant would be entitled to an article 38.23(a) instruction.  As
noted above, appellant argues there were inconsistencies in Officer Ashraf’s
testimony that affected his credibility; however, these “inconsistencies” did
not pertain to whether appellant verbally consented to the search.  On
cross-examination, Officer Ashraf agreed that using a written consent form
would have been the “best way” to attain consent but that he never used such forms. 
However, this testimony is not affirmative evidence that appellant did not
verbally consent.  

 

Additionally,
there was evidence of instances in which Officer Ashraf conducted searches
without consent.  Specifically, Swinney testified that she did not consent to
Officer Ashraf’s search.  Furthermore, appellant’s cousin testified that a car
he drove to Swinney’s house several days after appellant was arrested was
searched by Officer Ashraf without consent.  Although this evidence contradicted
Officer Ashraf’s averment that Swinney consented to the search and supported a
finding that he conducted searches without consent at least twice, it was not
affirmative evidence that appellant did not consent to the search.  “[C]ollateral
impeachment does not create an issue of fact as to the lawfulness of [an officer’s
search].”  Cerda v. State, 10 S.W.3d 748, 757 (Tex. App.—Corpus
Christi 2000, no pet.) (determining officer’s impeachment regarding his reasons
for stopping conspirator’s vehicle did not create fact question regarding
whether officer legally stopped defendant’s vehicle); see also Madden
v. State, 242 S.W.3d 504, 513–14 (Tex. Crim. App. 2007) (explaining that, to
be entitled to an article 38.23(a) instruction concerning whether officer
lawfully stopped defendant because he was speeding, “[t]here must be some
affirmative evidence of ‘did not speed’ in the record”).  But see Pruneda
v. State, 104 S.W.3d 302, 305 (Tex. App.—Texarkana 2003, pet. ref’d) (expressing
evidence that officer or police department had history of engaging in racial
profiling would raise fact issue regarding whether officer engaged in racial
profiling when he detained defendant).  Moreover, Swinney testified that she
did not know whether appellant provided consent.  Because there was no
affirmative evidence contradicting Officer Ashraf’s testimony that appellant verbally
consented, the issue should not have been submitted to the jury.  Consequently,
inclusion of the improper burden of proof in the article 38.23(a) instruction
was not erroneous.  See Hardin v. State, 951 S.W.2d 208, 210–11 (Tex.
App.—Houston [14th Dist.] 1997, no pet.) (concluding alleged inadequacy in an
article 38.23 instruction could not be erroneous because defendant was not
entitled to the instruction).  We overrule appellant’s second issue.  

IV.   Jury’s Implied Finding Regarding Voluntary
Consent 

            In his third issue,
appellant contends the evidence is insufficient to support the jury’s finding that
he voluntarily consented to the search.  We have already determined that
appellant was not entitled to the instruction regarding whether consent to
search was voluntary.  Nevertheless, whether appellant voluntarily consented to
the search of his room is not a question of sufficiency but admissibility. 
As such, appellant may not challenge the sufficiency of the evidence supporting
this implied finding.  See Hanks v. State, 137 S.W.3d 668,
672 (Tex. Crim. App. 2004); see also Malik v. State, 953 S.W.2d
234, 240 (Tex. Crim. App. 1997).  We overrule appellant’s third issue.      

V.   Jury’s Finding Regarding Possession

In his
fourth issue, appellant contends the evidence is factually insufficient to
support the jury’s finding that he possessed the cocaine.  While this appeal
was pending, five judges on the Texas Court of Criminal Appeals held that only
one standard should be employed to evaluate whether the evidence is sufficient
to support a criminal conviction beyond a reasonable doubt: legal sufficiency. 
See Brooks v. State, 323 S.W.3d 893, 894–95 (Tex.
Crim. App. 2010) (plurality op.); id. at 926 (Cochran, J., concurring). 
Accordingly, we review appellant’s challenge to the factual sufficiency of the
evidence under the legal-sufficiency standard.  See Pomier v. State, ---
S.W.3d ----, No. 14-09-00247-CR, 2010 WL 4132209, at *2 (Tex. App.—Houston
[14th Dist.] Oct. 21, 2010, no pet. h.) (applying single standard of review
required by Brooks).

When
reviewing legal sufficiency of the evidence, we view all evidence in the light
most favorable to the verdict and determine whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Brooks, 323
S.W.3d at 899 (plurality op.).  Following admonitions from the Court of
Criminal Appeals in Brooks, this court may not sit as a thirteenth juror
and substitute its judgment for that of the fact finder by reevaluating the
weight and credibility of the evidence.  Id. at 905, 911–12; Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); see also Sharp v.
State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (stating the jury may
choose to believe or disbelieve any portion of the testimony at trial).  Our
duty is to ensure that the evidence presented actually supports a conclusion
that the defendant committed the crime.  Williams v. State, 235 S.W.3d
742, 750 (Tex. Crim. App. 2007).  

In a
possession-with-intent-to-deliver case, the State must prove the defendant (1)
exercised care, custody, control, or management over the controlled substance,
(2) intended to deliver the controlled substance to another, and (3) knew that
the substance in his possession was a controlled substance.  Parker v. State,
192 S.W.3d 801, 805 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d); see also Tex.
Health & Safety Code Ann. § 481.002(38) (West 2010).  Possession may be proved through
either direct or circumstantial evidence.  Poindexter v. State, 153
S.W.3d 402, 405–06 (Tex. Crim. App. 2005).

            For the
following reasons, we conclude that the evidence is legally sufficient to
support the possession element of the charged offense beyond a reasonable
doubt.

·       
Officer Ashraf testified that
Swinney said appellant was “selling drugs out of my house.”

·       
Officer Ashraf witnessed appellant
exit a bedroom where Officer Ashraf later found four bags of cocaine.  Other
drug-related paraphernalia were discovered in the bedroom, including a
marijuana cigarette, razor blades, plastic bags, and a broken scale.  A
functioning scale was recovered in Swinney’s bedroom; she stated that this
scale belonged to appellant.

·       
Swinney testified that people who
are allowed to stay at her house use the back bedroom.  Officer Ashraf
testified that he searched the “last” bedroom in the house.

·       
Before Officer Ashraf entered the
house, appellant became irate and screamed at Swinney.  When asked if
appellant’s demeanor was normal for someone in his situation, Officer Ashraf
testified, “Not normally.  I make a lot of arrests.  And if there is nothing in
the room[,] they have nothing to be scared of.  So that’s not normal.”

Viewed
collectively, these facts support a finding that appellant was staying in the
bedroom where the cocaine was located and was concerned that Officer Ashraf would
discover the cocaine.  Therefore, the jury could have rationally inferred that appellant
exercised actual care, custody, control, or management over the cocaine and
knew the substance was a controlled substance.  Accordingly, we overrule
appellant’s fourth issue.

VI.   Witness’s Refusal to Testify Regarding Certain Issues

In his
fifth issue, appellant contends the trial court erred by allowing Swinney to
refuse to testify regarding certain issues. 

The
trial court appointed counsel for Swinney prior to her testimony.  She stated
on the record that her counsel advised her regarding her constitutional
rights.  Before she testified, Swinney requested to speak with appellant’s
counsel.  After they spoke, appellant’s counsel informed the court, “I just
told her to follow the advice of her counsel.”  Appellant then questioned
Swinney in front of the jury.  

During cross-examination,
the following exchanges occurred between the State and Swinney:

[Prosecutor:] 
And whether or not [appellant] was living there, he was staying with you at
that time; is that not right?

[Swinney:] 
Under advice of counsel I choose to take the Fifth, please.

[Prosecutor:] 
I’m sorry?

[Swinney:] 
I’m going to take the Fifth.

[Prosecutor:] 
You’re not going to answer that question?

[Swinney:] 
No.

. . . 

[Prosecutor:] 
Were you upset the defendant was selling drugs out of your home?

[Swinney:] 
I choose to take the Fifth.

. . . 

[Prosecutor:] 
So you did not at any time go in the house with the officer.

[Swinney:] 
I choose to take the Fifth.

. . .

[Prosecutor:] 
Okay.  Do you remember at any point handing anything to the officer, ma’am?

[Swinney:] 
I choose to take the Fifth.

[Prosecutor:]  
Are you aware of whether or not [appellant] gave consent for the officer to
look in his room?

[Swinney:] 
No, I’m not aware.

[Prosecutor:] 
Okay.  Would it surprise you to hear that he gave consent to the officer to
search in the room?

[Swinney:] 
I choose to take the Fifth.

[Prosecutor:] 
Ma’am, before you came out here today you were called to take the stand; is
that correct?

[Swinney:] 
Yes, I was.

[Prosecutor:] 
And you, in fact, decided that you needed to speak to the defense counsel . . .
before you came out here; is that correct?

[Swinney:] 
Yes, it is.

[Prosecutor:] 
Okay.  Is it a fair statement to say you’re a little bit nervous right now?

[Swinney:] 
No.

[Prosecutor:] 
Are you scared?

[Swinney:] 
No.

[Prosecutor:] 
And you stated that you’re friends with [appellant]; is that correct?

[Swinney:] 
Yes.

[Prosecutor:] 
So you wouldn’t want anything bad to happen to him; is that correct?

[Swinney:] 
I choose to take the Fifth.

[Prosecutor:] 
You did, in fact, before you were asked to come out here on the stand ask[] to
speak to [defense counsel]; is that correct?

[Swinney:] 
Yes.

During re-direct,
defense counsel asked the following questions:

[Defense
Counsel:]  Did you ever see [appellant] sell drugs?

[Swinney:] 
I choose to take the Fifth.

            When a
witness invokes her Fifth Amendment right against self-incrimination on the
advice of the witness’s counsel, the trial court is not obligated to make any
further determination.  See Ross v. State, 486 S.W.2d 327, 328 (Tex. Crim. App. 1972); Boler v. State, 177 S.W.3d 366, 371 (Tex.
App.—Houston [1st Dist.] 2005, pet. ref’d).  Further, if the trial court was
not requested to compel the witness to testify, a defendant may not claim for
the first time on appeal that the witness waived her Fifth Amendment privilege. 
Brown v. State, 500 S.W.2d 653, 655 (Tex. Crim. App. 1973).   
         

When she
initially asserted privilege, Swinney expressed, “Under advice of counsel I
choose to take the Fifth, please.”  Thus, the trial court was under no
obligation to inquire into the basis of her privilege assertion.  See Ross,
486 S.W.2d at 328; Boler, 177 S.W.3d at 371.  Additionally, appellant
has not preserved any argument that Swinney waived her Fifth Amendment
privilege because he never requested that she be compelled to testify.  See Brown, 500
S.W.2d at 655.  Accordingly, we overrule appellant’s fifth issue.      

VII.   Juror Misconduct

            In his sixth
issue, appellant contends the trial court erred by refusing to grant a mistrial
because of juror misconduct.

A mistrial is an appropriate remedy
in “extreme circumstances” for a narrow class of highly prejudicial and
incurable errors.  See Hawkins v. State, 135 S.W.3d 72,
77 (Tex. Crim. App. 2004).  A mistrial is necessary when error is so
prejudicial that expenditure of further time and expense would be wasteful and
futile.  Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). 
Whether an error requires a mistrial must be determined by the particular facts
of the case.  Id.  We review a trial court’s denial of a mistrial for
abuse of discretion.  Id.  We view the evidence in the light most
favorable to the trial court’s ruling, considering only those arguments before
the court at the time of the ruling.  Wead v. State, 129 S.W.3d 126, 129
(Tex. Crim. App. 2004).  The ruling must be upheld if it was within the zone of
reasonable disagreement.  Id.

During
deliberations, the trial court was informed that one of the jurors, an attorney,
referred to information not presented at trial, causing another juror to complain
about the alleged misconduct to another person outside the courthouse. 
Coincidentally, the attorney-juror was involved in an automobile accident and
was replaced by the alternate juror.  The trial court explained to the jury why
it had become necessary to use an alternate juror and thoroughly admonished
that the court’s charge was the only law the jury could consider.  The trial
judge further instructed the jury that they must not allow outside information
to influence their deliberations.  The trial court then interviewed the jurors
individually and questioned them regarding the outside information provided by
the attorney-juror.  One of the jurors revealed that the attorney-juror had
advised that oral consent to search was ineffective.  This advisement was
contrary to the court’s charge and, thus, impermissible.  See Ocon v. State, 284
S.W.3d 880, 884 (Tex. Crim. App. 2009) (“A juror must make decisions at
the guilt and punishment phases using information obtained in the courtroom: the
law, the evidence, and the trial court’s mandates.”).  However, all twelve
jurors expressed that the attorney-juror’s statements did not affect or
influence them or that they were able to disregard outside statements.[3] 


            Appellant
argues that the trial court should have identified the jury who spoke with the
person outside the courthouse and also should have conducted a more thorough
investigation into the misconduct.  We disagree.  Because the jurors expressed
they would not be influenced by outside information, the trial court reasonably
determined that the jury was able to be fair and impartial.  Accordingly, the
trial court did not err by denying appellant’s motion for mistrial.  We
overrule appellant’s sixth issue. 

VIII.   Lack of Hearing on Motion for New Trial

In his
eighth issue, appellant contends the trial court erred by failing to conduct a
hearing on his motion for new trial.  However, appellant was not entitled to a
hearing because he failed to present his motion to the trial court.  See Tex.
R. App. P. 21.6; Stokes v. State, 277 S.W.3d 20, 21 (Tex.
Crim. App. 2009) (“The purpose of the presentment rule is ‘to put the trial
court on actual notice that a defendant desires the trial court to take some
action on the motion for new trial such as a ruling or a hearing on it.’”); Rozzell
v. State, 176 S.W.3d 228, 231 (Tex. Crim. App. 2005) (concluding that
defendant does not preserve any error in the trial court’s failure to conduct a
hearing if no request for a hearing was presented).  Accordingly, we overrule
appellant’s eighth issue.

IX.   Assistance of Counsel

In his
seventh issue, appellant contends he received ineffective assistance of
counsel.  

A.   Standard of
Review

In
reviewing claims of ineffective assistance, we apply a two-pronged test.  See
Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  The
defendant must prove by a preponderance of the evidence that (1) counsel’s
representation was deficient because it fell below the standard of prevailing
professional norms and (2) there is a reasonable probability that, but for
counsel’s deficiency, the result would have been different.  Id. (citing
Strickland, 466 U.S. at 687).  “Reasonable probability” is a “probability
sufficient to undermine confidence in the outcome,” meaning “counsel’s errors
were so serious as to deprive the defendant of a fair trial, a trial whose
result is reliable.”  Smith v. State, 286 S.W.3d 333, 340 (Tex. Crim.
App. 2009) (quoting Strickland, 466 U.S. at 687, 694).  We consider the totality of the
representation and the particular circumstances of each case.  Thompson v.
State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  We begin with the strong
presumption that counsel’s actions and decisions were reasonably professional
and motivated by sound trial strategy.  Stults v. State, 23 S.W.3d 198,
208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d).  To overcome the
presumption, the “allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness.”  Thompson, 9 S.W.3d at 814 (quoting McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

The record is best developed in a hearing on a motion
for new trial or an application for a writ of habeas corpus.  Stults, 23
S.W.3d at 208.  Where there is no record relative to counsel’s decisions and
actions, an allegation of ineffective assistance can often lie beyond effective
appellate review.  See id.  However, when no reasonable trial strategy could justify
counsel’s conduct, counsel’s performance may fall below an objective standard
of reasonableness as a matter of law, regardless of whether the record
adequately reflects counsel’s strategy.  Andrews v.
State, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).  Our review of defense counsel’s
conduct, however, must be highly deferential, and we should avoid the
deleterious effects of hindsight.  Ingham v. State, 679 S.W.2d 503, 509
(Tex. Crim. App. 1984).

B.   Analysis

We first
consider appellant’s contention that counsel was ineffective by failing to object
to the erroneous “clear and convincing evidence” burden of proof in the article
38.23(a) instruction submitted to the jury.  We cannot conclude counsel was
deficient by failing to object to the article 38.23(a) instruction because we
have already determined appellant was not entitled to the instruction.  See
Hardin, 951 S.W.2d at 211 (“We conclude that [counsel was not ineffective
for failing to object to the adequacy of the article 38.23 instruction]
because, as noted above, appellant was not entitled to an article 38.23
instruction at all.”).  

Next, appellant
argues counsel was ineffective by failing to object to Officer Ashraf’s testimony
regarding statements Swinney made to him on the day of appellant’s arrest.  Appellant
contends these statements should have been excluded because they were inadmissible
hearsay and violated his Sixth Amendment right to confrontation.  According to
appellant, counsel should have at least requested that Swinney’s statements be
considered only for purposes of whether Officer Ashraf had consent to search
the house.  The State responds that Swinney’s statements fell within the
“excited utterance” hearsay exception and did not implicate appellant’s
confrontation rights.

 

An
excited utterance is “[a] statement relating to a startling event or condition
made while the declarant was under the stress of excitement caused by the event
or condition.”  Tex. R. Evid. 803(2).  To qualify as an excited utterance, (1) the statement must be the product
of a startling occurrence that produces a state of nervous excitement in the
declarant and renders the utterance spontaneous, (2) this state of excitement
must be so dominant in the declarant’s mind that there is no time or opportunity
to contrive or misrepresent, and (3) the statement must relate to the
circumstances of the occurrence preceding it.  Kesaria v. State, 148
S.W.3d 634, 642 (Tex. App.—Houston [14th Dist.] 2004), aff’d, 189 S.W.3d
279 (Tex. Crim. App. 2006).  The “pivotal inquiry is ‘whether the declarant was
still dominated by the emotions, excitement, fear, or pain of the event.’”  Id.
(quoting King v. State, 953 S.W.2d 266, 269 (Tex. Crim. App.
1997)).   

Under
the Sixth Amendment right of confrontation, the State must show that an
out-of-court, testimonial statement offered against an accused was made by a
declarant who (1) is presently unavailable and (2) was subject to
cross-examination by the accused.  Langham v. State, 305 S.W.3d 568, 575–76
(Tex. Crim. App. 2010) (citing Crawford v. Washington, 541 U.S.
36, 59, 68 (2004)).  However, out-of-court statements made to police are not
considered testimonial if they are made “‘to enable police assistance to meet
an ongoing emergency’” rather than “‘to establish or prove past events
potentially relevant to later criminal prosecution.’”  Vinson v. State,
252 S.W.3d 336, 338 (Tex. Crim. App. 2008) (quoting Davis v. Washington,
547 U.S. 813, 822 (2006)).          

Officer
Ashraf testified that he was already “in the area” when he was dispatched to
Swinney’s location.  This evidence supports an inference that Officer Ashraf
quickly responded to the emergency.  As noted above, when Officer Ashraf first
met with Swinney, she was crying, “[r]eal shaky,” “[v]ery nervous,” and too
“scared” to speak with him.  After he hugged her and brought her outside, she
finally confided, “[T]here is a guy in my house that I want out of my house. 
I’m very scared of him.  He’s scaring me and he’s selling drugs out of my
house.  I want him out.”  As Officer Ashraf and Swinney approached her house,
she was “really scared” and agreed to allow Officer Ashraf to help her only
after coaxing.  She also kept repeating appellant’s name.

We
conclude that the foregoing statements qualify as “excited utterances” under
Rule 803(2).  See, e.g., Hudson v. State, 179 S.W.3d 731, 737 (Tex.
App.—Houston [14th Dist.] 2005, no pet.) (concluding “excited utterance”
exception applied because complainant was “visibly shaken and highly upset when
[officers] arrived within five minutes of receiving assault call”); Bufkin
v. State, 179 S.W.3d 166, 172 (Tex. App.—Houston [14th Dist.] 2005)
(concluding “excited utterance” exception applied because complainant was
“extremely agitated when officers arrived at the scene . . . [and] so upset
that officers initially could not understand her”), aff’d, 207 S.W.3d
779 (Tex. Crim. App. 2006).  Further, Swinney’s statements were non-testimonial
and did not violate appellant’s confrontation rights because they were made primarily
to assist Officer Ashraf during an ongoing emergency.  See Vinson, 252
S.W.3d at 338–39; Wilson v. State, 296 S.W.3d 140, 147–48 (Tex.
App.—Houston [14th Dist.] 2009, pet. ref’d).  Therefore, counsel cannot have
performed deficiently by failing to object to, or request a limiting
instruction regarding, Swinney’s admissible statements.  See Ex parte White,
160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (“To show ineffective assistance
of counsel for the failure to object during trial, the applicant must show that
the trial judge would have committed error in overruling the objection.”).[4]

Finally,
appellant contends counsel was ineffective because he failed to first question
Swinney outside the jury’s presence in order to determine the substance of her potential
testimony.  Appellant argues that, without taking this precaution, Swinney was permitted
to refuse to answer several important questions in front of the jury. 
Appellant contends Swinney’s refusals to testify prevented the jury from
hearing that the contraband actually belonged to her.  Further, appellant
argues that, during closing argument, the prosecutor blamed appellant for
Swinney’s piecemeal testimony as follows:  

I want to
go ahead and talk about [Swinney], the complainant in this case.  You heard
that, in fact, when she was going to be brought out she had a break.  She
needed a break to speak to . . . the defense attorney . . . before she got up
there on the stand.  You heard her not answer my questions.  When it came down
to the important questions did you know [if] the defendant ever sold any drugs
from your home?  Did you know if the defendant gave any voluntary consent?  Did
the defendant ever live or stay with you?  She refused to answer any of those
questions.  And why do you think that is?  Because, as she stated, she’s his
friend.  And she doesn’t want to get him in trouble.

            Indeed,
Swinney and defense counsel spoke privately prior to her testimony.  Afterwards,
defense counsel stated on the record, “I just told her to follow the advice of
her counsel.”  However, nothing in the record reveals the subject of the conversation
between Swinney and defense counsel.  During this private meeting, defense
counsel could have discovered reasons not to question Swinney. Accordingly, the
record does not “affirmatively demonstrate” that counsel acted deficiently by
failing to interview Swinney.  Thompson v. State, 9 S.W.3d 808, 812
(Tex. Crim. App. 1999).[5] 
We overrule appellant’s seventh issue.

X.   Cumulative Error

            Finally, in
his ninth issue, appellant contends that all the errors combined deprived him
of a fair trial.  However, we have considered each issue independently and
determined that no error was committed; consequently, there is no “cumulative
error” for us to consider.  See Chamberlain v. State, 998 S.W.2d 230,
238 (Tex. Crim. App. 1999) (“[W]e are aware of no authority holding that
non-errors may in their cumulative effect cause error.”).  Accordingly, we overrule appellant’s ninth and final issue.

            We affirm the
trial court’s judgment.

                                                                                                                                                            

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Seymore and Sullivan.[6]
(Sullivan, J., not participating.)

 

Publish — Tex. R. App. P. 47.2(b).









[1]
See Tex. Health & Safety Code Ann. §§ 481.102(3)(D), 481.112(a), (d)
(West 2010). 





[2]
Appellant urges us to apply the exclusion-of-evidence standard of review we
discussed (but did not employ) in Caddell v. State, 123 S.W.3d 772,
726–27 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d); see also Hanks v.
State, 137 S.W.3d 668, 672 (Tex. Crim. App. 2004) (adopting our
position in Caddell that admissibility of evidence is not subject to
sufficiency review).  However, Caddell concerned the standard for
reviewing an implied jury finding, whereas we are reviewing the trial court’s
ruling on a motion to suppress.  Hence, Caddell is inapplicable, and we
will employ the well-established standard for reviewing motions to suppress.





[3]
Only one of the jurors said she had a “strong opinion” regarding the
attorney-juror’s misconduct and felt the misconduct influenced the other
jurors.  Nevertheless, she stated that the misconduct did not influence her. 
Additionally, another jury opined that she did not believe the misconduct influenced
the other jurors.





[4] Appellant argues that the record conclusively
establishes counsel’s failure to object was not based on any sound trial
strategy.  After the State rested, counsel argued to the trial court that
appellant’s right to confrontation was jeopardized because the State failed to
call Swinney as a witness.  The State, apparently cognizant of counsel’s
plight, responded that it was under no obligation to call Swinney and appellant
waived confrontation issues by failing to object when Officer Ashraf testified
regarding Swinney’s hearsay.  However, we need not determine whether this was a
sound strategy because we have determined that Swinney’s statements were
admissible. 





[5]
The record reflects that, immediately after the State rested, the trial court
offered defense counsel an opportunity to question Swinney outside the presence
of the jury for purposes of his motion to suppress, but counsel declined. 
Appellant argues that counsel’s refusal to question Swinney outside the jury’s
presence when invited to do so by the trial court establishes deficiency
in his performance.  However, it was later in the trial when counsel spoke
privately with Swinney.  Consequently, any mistake counsel made by declining
the court’s earlier offer could have been rectified by whatever Swinney later
told or asked counsel.    





[6]
Justice Sullivan was assigned to the panel for this case and participated
during oral argument.  However, he subsequently resigned from the court
and did not participate in deciding this case.  See Tex. R. App. P.
41.1(b) (“After argument, if for any reason a member of the panel cannot
participate in deciding a case, the case may be decided by the two remaining
justices.”).