# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00350-CR

**James Bell IV, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 65583, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found James Bell IV guilty of possession with intent to deliver cocaine in an amount of four grams or more but less than 200 grams. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2010). After Bell pleaded true to allegations of prior convictions, the district court sentenced him to forty years' imprisonment and a $2,000 fine. Bell appeals, asking this Court to reverse his conviction and remand for a new trial because, he asserts, the admission of eleven exhibits, statements made by Bell while in custody, and testimony of Bell's roommate amounted to "fundamental error or plain error." We will affirm the district court's judgment.

## BACKGROUND

The underlying facts of this case are not disputed on appeal. Officers Mitchell and Bradley of the Killeen Police Department were dispatched to an apartment complex to investigate the smell of marijuana reported to be coming from one of the apartments, apartment D. When the

officers knocked on the door, there was no answer, but they could smell marijuana. As they were about to leave the complex, Bell arrived in a Ford Explorer and went to apartment D with keys in his hand. The officers approached Bell and asked him for identification. Bell responded that his identification was in the Explorer, so he went to retrieve it, but returned empty handed and said that he must have left it in the apartment. Bell then unlocked the door to the apartment, and Mitchell positioned himself so that he could see into apartment to make sure that no one else was inside. As Bell entered the apartment, Mitchell and Bradley could smell freshly burned and raw marijuana. Mitchell was also able to see loose marijuana sitting on a red tray on the coffee table in the apartment. As appellant came back to shut the door, the officers entered the apartment and again asked Bell for identification. Bell responded that it was actually going to be in the Explorer in a green "Cricket" bag behind the driver's seat. Mitchell asked if he could retrieve the identification for Bell, and Bell replied, "Yeah, go ahead," and gave Mitchell the keys to the Explorer.

Mitchell went to the Explorer and looked for the Cricket bag. He found the bag behind the driver seat, as Bell said it would be. On top of the Cricket bag there were "two baggies," one of which contained several smaller bags of cocaine and one of which contained crack cocaine. Mitchell looked in the bag and found another baggie of cocaine and a card with Bell's name on it. He then brought the Cricket bag to Bell and asked whether this was the bag he was taking about and whether this bag belonged to him. Bell said yes. Mitchell informed Bell that he had found cocaine and asked Bell if Bell had anything else on him. Bell said he had marijuana in his pocket. Mitchell recovered the marijuana and placed Bell under arrest.

The officers planned to seat Bell on the couch in the apartment, but they wanted to search it first "for officer safety and [Bell's] safety." Under the couch cushion, Bradley found a

2

loaded Hi-Point 9mm handgun, Bell's wallet with identification in it, and a black Adidas bag, which was open and had another baggie of cocaine sticking out of it. The officers also cleared the coffee table in front of the couch, which contained the red tray with loose marijuana and a digital scale. Then they allowed Bell to sit down.

At some point, Bell volunteered that the apartment did not actually belong to him; he was staying there, but the lease was in the name of his girlfriend, Myna Jean Trevino, who worked nearby. Bell said he had just dropped her off at work. Bell gave Mitchell Trevino's phone number, and Mitchell called her to ask whether Bell belonged in the apartment. She confirmed that Bell was staying with her. She then came back to the apartment at Mitchell's request. When she arrived, she told the officers that everything they found in the apartment belonged to her. However, she later said that she was unaware of the cocaine, and that she was trying to "take the fall" for the marijuana, which was hers. The officers explained that they were going to search the rest of the apartment. Trevino initially did not consent to a search, so the officers called a detective, who instructed them to "freeze the scene" until they could obtain a search warrant. During that phone conversation, Trevino changed her mind and signed a form consenting to the search. She also asked to have a drink from a particular cup that was on a coffee table, and when the officer handed her the cup, he found a baggie of crack cocaine underneath it. While searching the apartment, the officers also found crack cocaine hidden in a candle holder.

All of the evidence collected was admitted at trial without objection.[1] In fact, Bell's trial counsel made only one objection during the trial, during the State's closing argument, when he

---

[1] Bell also does not appear to have filed a motion to suppress.

objected to the State's explanation "[i]f you find that he possessed [the drugs] either jointly or by himself, the man is guilty of the offense." Bell's attorney objected on the grounds that "it's required to prove that he intended to possess and with the intent to deliver." This objection was overruled.

Bell's attorney called one witness—Trevino—in Bell's defense. Trevino testified that the cocaine belonged to Bell and she had no knowledge of it prior to Bell's arrest. In response to questioning by Bell's attorney, Trevino testified that she was upset that, as a result of the incident with Bell, she was in jail for a month before making bail. Bell's attorney then asked "How long was Mr. Bell in?" Trevino responded, "Thirty minutes." Counsel followed up with the question, "You seem upset at that?" Trevino elaborated that she was "living [her] life normally" except for occasional marijuana use, and that she was upset that Bell did not help her make even a fourth of her bond after she let him stay with her, so she "had to borrow money from everywhere," while he was able to come up with whatever money was necessary to make his bond in thirty minutes. On cross examination, the State asked "Do you know what size bond Mr. Bell was able to make within 30 minutes of being arrested?" And Trevino responded, "$50,000 bond." In the State's final argument, the prosecutor emphasized this testimony:

> you can consider how quickly the defendant made bond. You heard from Miss Trevino that the defendant made a $50,000 bond in 30 minutes. He's living at someone else's house, driving someone else's car, but yet he's making a $50,000 bond. Where do you think he's getting that money? You can consider that.

In reality, Bell had made bail within thirty minutes of when it was set, but he had actually spent two days in jail before bail was set. Thus, Trevino's testimony suggesting that Bell was only in jail for thirty minutes was false.

4

After being convicted by the jury, Bell was sentenced by the district court to forty years' imprisonment and a $2000 fine. Bell appeals, asserting in four issues that (1) the district court erred in admitting ten of the State's exhibits because they "are the products of the illegal search of Appellant's apartment"; (2) the district court erred in admitting a manila envelope that "is covered with stickers which contain inadmissible hearsay"; (3) the district court "erred in admitting Appellant's oral custodial statements" when "there was no evidence of *Miranda* warnings and Article 38.22 safeguards";[2] and (4) "the State knowingly used false or misleading evidence that Appellant had posted a $50,000 bond 30 minutes after his arrest." Appellant acknowledges that Bell's motion for new trial "raised no grounds other than the interests of justice"[3] and "[t]here were no objections to admission of highly incriminatory evidence."[4] But he asserts that the evidence was "gathered in clear violation of the Constitutions of the United States and Texas as well as Texas statutory law." He therefore urges that "Texas should either adopt the federal plain error standard

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005).

[3] We note that although the motion for new trial argued only for a new trial in the interest of justice, Bell's affidavit in support of his motion for new trial states, without elaboration, "No search warrant." This statement in his affidavit is insufficient to preserve the issue for appeal. *See Krause v. State*, 243 S.W.3d 95, 105 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding motion to suppress must be timely and sufficiently specific to inform trial court of complaint); *Bennett v. State*, 82 S.W.3d 397, 399 (Tex. App.—Austin 2002, no pet.) (holding no error preserved where appellant did not move to suppress or otherwise object to evidence allegedly seized as result of unlawful search); *Reha v. State*, No. 14-95-01349-CR, 1997 Tex. App. LEXIS 5114, at *3, *10 (Tex. App.—Houston [14th Dist.] Sept. 25, 1997, pet. ref'd) (not designated for publication) (citing *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996)) (holding motion to suppress that did not identify evidence seized pursuant to the defendant's arrest failed to lodge a specific objection as required and thus failed to preserve claim for review).

[4] Regarding the eleven exhibits that are the subject of Bell's first two issues, Bell's counsel stated at trial that he had "no objection" to those exhibits as they were admitted.

or apply the *Marcus* test or a similar formulation in applying the fundamental error provision of Rule 103(d)." *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention"); Tex. R. Evid.103(d) (stating courts may "take notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court"); *United States v. Marcus*, 560 U.S. ___, ___, 130 S. Ct. 2159 (2010). Under this test, Bell contends, forfeited error (i.e., error for which no objection has been made) should be reviewable for plain error, while waived error (i.e., a party's relinquishment of a known right) would be unreviewable. Bell urges that adopting such a standard "would not only see that justice is done but prevent writs of habeas corpus based on ineffective assistance of counsel." The State responds that "there is no reason to consider the adoption of the federal rule and the abandonment of long standing precedent" that already addresses fundamental error in Texas and that Bell's arguments fail even under federal rule 52 and *Marcus*.

## DISCUSSION

We are bound by Texas law in determining whether Bell is entitled to the relief he seeks. To preserve error for appellate review, the complaining party must have made an objection, motion, or request stating "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A); *Clark v. State*, 365 S.W.3d 333, ___, No. PD-0218-10, 2012 Tex. Crim. App. LEXIS 649, at *12 (Tex. Crim. App. May 9, 2012). "The point of error on appeal must comport with the objection made at trial." *Clark*, 365 S.W.3d at___, 2012 Tex. Crim. App. LEXIS 649, at *12. Therefore, if a party fails to properly object to

6

errors—even constitutional errors—at trial, these errors can be forfeited. *Id.*; *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990). A reviewing court should not address the merits of forfeited errors on appeal. *Wilson v. State*, 311 S.W.3d 452, 473-74 (Tex. Crim. App. 2010); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). However, "an appellate court may, in rare cases, 'take notice of fundamental errors affecting substantial rights although they were not brought to the attention of the trial court.'" *Boler v. State*, 177 S.W.3d 366, 373 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (quoting Tex. R. Evid. 103(d)); *see Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).

Bell presents no argument or authority suggesting that his conviction should be reversed based on fundamental error under rule of evidence 103(d); he instead relies exclusively on the four-part plain-error test that represents the U.S. Supreme Court's interpretation of federal rule 52(b).[5] No Texas court has adopted federal rule 52's plain-error standard, and we decline to do so here. *See Solis v. State*, No. 14-06-00502-CR, 2007 Tex. App. LEXIS 2858, at \*4-6 (Tex.

---

[5] In *United States v. Marcus*, the Court wrote:

> Rule 52(b) permits an appellate court to recognize a "plain error that affects substantial rights," even if the claim of error was "not brought" to the district court's "attention." Lower courts, of course, must apply the Rule as this Court has interpreted it. And the cases that set forth our interpretation hold that an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

560 U.S. ___, ___, 130 S. Ct. 2159, 2164 (2010) (citations omitted).

7

App.—Houston [14th Dist.] Apr. 12, 2007, no pet.) (mem. op.) (declining to apply federal rule 52 to consider unpreserved error because "the federal rules of procedure apply in federal courts, not state courts"); *Flores v. State*, No. 13-99-561-CR, 2001 Tex. App. LEXIS 1091, at * 4 (Tex. App.—Corpus Christi Feb. 15, 2001, no pet.) (not designated for publication) (declining to review conviction under plain-error test and stating "[t]he Federal Rules of Criminal Procedure are applicable to federal trials, not state trials"). As such, Bell has not shown that he is excepted from the general error-preservation requirement. *See Boler*, 177 S.W.3d at 373. Further, because the record shows, and Bell has acknowledged, he made no objection, motion, or request complaining of the admission of the evidence and arguments about which he now complains on appeal, he has failed to preserve error for any of the issues he raises on appeal. *See* Tex. R. App. P. 33.1(a); *Saldano v. State*, 70 S.W.3d 873, 886-89 (Tex. Crim. App. 2002) (discussing error preservation and waivable and forfeitable rights); *Peavey*, 248 S.W.3d at 470; *see also Resendez v. State*, 306 S.W.3d 308, 315-17 (Tex. Crim. App. 2009) (holding appellant did not preserve his article 38.22 argument for appeal where he did not make sufficiently specific objection in trial court); *Marin*, 851 S.W.2d at 278 (stating that trial judge has no duty to exclude hearsay absent objection of party and using rule against hearsay as example of rule that can be forfeited); *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986) (where record did not reflect whether appellant was given *Miranda* warnings, court held error was not preserved for review because appellant did not object at trial); *Hajjar v. State*, 176 S.W.3d 554, 566 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding that by failing to object to prosecutorial misconduct at trial, "appellant has preserved nothing for our review"); *Bennett v. State*, 82 S.W.3d 397, 399 (Tex. App.—Austin 2002, no pet.) (holding

that "[n]o error is preserved" where appellant did not move to suppress or otherwise object to evidence allegedly seized as result of unlawful search).  Consequently, there is no basis for reversing Bell's conviction.

## CONCLUSION

We affirm the district court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   July 25, 2012

Do Not Publish